FRANKLIN SAVINGS BANK et al. v. TAYLOR et al.

(Circuit Court of Appeals, Seventh Circuit. January 18, 1893.)

No. 5.

1. TRUSTS—INFANT BENEFICIARIES—BILL OF REVIEW—MORTGAGE.
   A deed of trust for the benefit of minors contained a provision that the trustee should not incumber the property. The record of the deed being destroyed by fire, it was restored by a decree of court in which the deed was declared to authorize the trustee to incumber the property. Afterwards, in another suit, a new trustee was appointed, and authorized to make a certain loan to be secured by mortgage. *Held* that, as against the person making such loan in good faith, the minors had no right to have the decree authorizing the mortgage declared void by bill of review, since a decree against infants cannot be attacked for mere mistake as against third persons who have in good faith acquired rights under it. Lloyd v. Kirkwood, 112 Ill. 338, followed. 50 Fed. Rep. 289, reversed.

2. RECORD—CONSTRUCTIVE NOTICE—BURNT RECORDS—DECREE.
   A record of a deed is constructive notice of its terms, though the record has been destroyed; but when a lawful decree has been subsequently rendered, incorrectly declaring the terms of the deed, the destroyed record ceases to be constructive notice of those terms which are incorrectly declared. 50 Fed. Rep. 289, reversed.

3. MORTGAGE—CONSIDERATION—ANTECEDENT DEBT.
   When a creditor surrenders and releases his former obligation and security, extends the time of payment, makes an additional loan, and takes a new mortgage for the entire debt, with the former debtor as surety and a new party as principal debtor, he becomes a mortgagee for value for the full amount of the entire debt.

4. BILL OF REVIEW—DECREE AGAINST INFANTS—CONSENT.
   Where a decree against infants who have appeared by guardian ad litem does not purport upon its face to have been rendered by consent, it will not be set aside on bill of review on the ground that it was in fact rendered by consent, where it is not shown that such consent was fraudulent, or in some way injurious to the infant defendants.

5. SAME—AFFIRMANCE ON APPEAL.

A bill of review will not lie where the original decree has been affirmed on appeal.[1]

6. RES JUDICATA—PARTIES—AFTER-BORN BENEFICIARIES—REPRESENTATION.

Where the legal title to land is held by a trustee for the benefit of a certain person and her children, born and to be born, a decree affecting the trust estate, rendered by a court of competent jurisdiction in a suit to which the trustee and all the living beneficiaries are parties, binds after-born beneficiaries also.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Bill of review brought by Robert C. Taylor, Katherine Taylor, and Margaret Taylor against the Franklin Savings Bank, Hiram H. Thomas, Henry Gilsdorff, James B. Sullivan, Frederick Baumann, Edward Baumann, Charles H. Mulliken, Frank C. Taylor, Maria L. Taylor, Frank C. Taylor, Jr., Maria L. Taylor, Jr., Josephine S. Taylor, Alexander Taylor, and Ira Scott, and cross bill by four of the respondents. Complainants and cross complainants obtained a decree. 50 Fed. Rep. 289. Defendants appeal. Reversed.

Statement by WOODS, Circuit Judge:

The principal facts have been well stated by Judge Blodgett in his opinion—50 Fed. Rep. 289—as follows:

"This is a bill to review, reverse, and set aside a decree of foreclosure, entered in this court on the 30th of April, 1880, under which defendant claims title to lots 1, 4, and 5 of the subdivision of lot '4, in block 16, in Bushnell's addition to the city of Chicago; and also to set aside a sale made July 15, 1881, under a decree for a mechanic's lien, in favor of Gilsdorff and others, entered in the circuit court of Cook county, July 20, 1874. * * * The facts, as they appear from the proof, and which are not disputed, are that on the 13th of June, 1871, Maria Louise Taylor, being seised in fee of all of lot 4, in block 16, in Bushnell's addition to Chicago, joined with her husband, Frank C. Taylor, in the execution of a deed of the premises to Ira Scott, to hold upon certain trusts, in the deed set forth, which trusts, so far as it is necessary to state them for the purposes of this case, were that the property was to be held for the benefit of Mrs. Taylor and the children of the marriage between Frank C. Taylor, her husband, and herself, except that in the event of the death of Mrs. Taylor and of the children, before the youngest child had reached the age of twenty-one years, Mr. Taylor, or his heirs, should become entitled to the remainder of the estate. The deed of trust contained an express provision ' that no lien, incumbrance, or charge shall be created on said premises;' and although there was a provision in the trust deed that the trustee might sell some portion of the premises for the purpose of improving that which was unsold, yet the provision was so guarded as to prohibit the creation of any lien, incumbrance, or charge upon the unsold portion of said premises. At the time the deed was made, there was a house upon the premises, which was occupied by Mr. and Mrs. Taylor as their home, this house covering only a comparatively small part of the lot. When this trust was created, three children had been born to Mr. and Mrs. Taylor, and four have since been born, and this bill was filed by the three youngest of the seven children; the three oldest having arrived at lawful age since this bill was filed, and the other four are still minors.

"By the great fire of October 8 and 9, 1871, the house upon the trust premises was destroyed, and the public records of deeds of land titles in the city

---

[1] The circuit court of appeals for the first circuit seems to have reached the same conclusion in the recent case of Watson v. Stevens, 53 Fed. Rep. 31, for in its mandate the court there reserved liberty to the defeated party to file a bill of review in the circuit court.

were also destroyed, and the trust deed itself was for several years supposed to have been destroyed by the same fire, although it had been duly recorded within a few days after its date. In January, 1872, Mr. Taylor borrowed the sum of $30,000 from the Franklin Savings Bank, the principal defendant in this case, for which he gave his own note, payable one year after date; and, to secure the payment of that note, he and his wife executed to Edward Brown a trust deed upon the whole of said lot 4, in block 16. The money so borrowed by Taylor was used in building upon the trust premises a block of five dwelling houses, which cost about $53,700. In January, 1873, Taylor and his wife filed a petition in the superior court of Cook county, under the provisions of what is known as the 'Burnt Records Act' of this state, alleging the making and recording of the deed of trust, the destruction of the records, and the loss of the deed itself, and praying an establishment and confirmation of the trust deed and its terms, as set out in said petition; and such proceedings were had under this petition that on the 19th of March, 1873, a decree was entered establishing and confirming what was found, from the proof, to be a substantial copy of the trust deed, but in fact omitting the clause which provided that no lien, incumbrance, or charge should be created on the premises, and containing, in place of that clause, a clause that authorized the trustee to make lien, for the purpose of rebuilding, etc. After the entry of this decree, Scott, the trustee, and Taylor and wife made a subdivision and plat of said lot 4, dividing the same into five sublots, numbered from 1 to 5, inclusive. On the 22d day of July, 1873, Mr. Scott declined to act longer as trustee, and Taylor and wife filed a bill in the superior court of Cook county for the appointment of another trustee, and that such new trustee be empowered to make a loan of money sufficient to reimburse them for the fair value and cost of the improvements made on said lots; and a decree was on the 19th of August, 1873, entered appointing Charles H. Mulliken, trustee, as successor to Mr. Scott, and authorizing him to make a loan to pay Mr. and Mrs. Taylor the cost of the improvements made on the lots, not to exceed $53,700. Mr. Mulliken accepted the trust, and on the 23d of August made four trust deeds, covering sublots 1, 2, 4, and 5 of said subdivision, to Francis S. Howe, trustee, to secure the payment of four notes of $9,000 each given by Mulliken and Mr. and Mrs. Taylor to the Franklin Savings Bank; and on the 1st of January, 1874, Mulliken, the trustee, and Mr. and Mrs. Taylor joined in the execution of another trust deed to Francis S. Howe, to secure the individual note of Taylor to the Franklin Savings Bank for $2,875. The proceeds of the four first-mentioned trust deeds were used to take up the $30,000 loan made by Taylor from the bank in June, 1872, and the last-mentioned trust deed for $2,875 was to secure a personal indebtedness of Taylor's to the bank, not growing, as the proof shows, out of the rebuilding.

"In September, 1873, a petition for a mechanic's lien was filed by Henry Gilsdorff for labor and materials used in the construction of the block of new buildings, in which petition other contractors intervened. This case came to hearing in July, 1874, and resulted in a decree establishing liens on the premises in favor of Gilsdorff and those who had intervened with him, which decree was afterwards affirmed by the supreme court of this state at the September term, 1874. 74 Ill. 354. In June, 1876, the Franklin Savings Bank filed in this court a bill to foreclose the four trust deeds of August 23, 1873, which, after default of some of the adult defendants, and answers by the guardian ad litem of the infant defendants, was in May, 1877, referred to a master to take proofs and report. In June, 1877, the original deed of trust to Scott was found, and very soon thereafter bills of review were filed in the case under the burnt records act, and in the suit brought for the appointment of a new trustee in the place of Scott, and in which the decree appointed Mulliken trustee, and authorized him to make the loan to pay for building the five houses, which bills of review resulted in decrees setting aside the former decrees in those cases; but the decree in the case under which Mulliken was appointed trustee contained a clause that nothing therein ordered or contained should deprive the Franklin Savings Bank, or Howe, the trustee in the said trust deeds, of any interest they, or either of them, might have in the trust estate, the claims of the bank and said Howe not having been heard or adjudicated.

"After the original trust deed was found, the bank filed a supplemental bill in the foreclosure case, which was answered. Before a report was made by the master, terms of settlement or compromise were made between the bank and the guardian ad litem of the infant defendants then in court, which included all the children then born, and all the children of the parents, except Margaret, the youngest. By this compromise the children were to have one of the sublots and the house thereon, free and clear of all incumbrance. On the 29th of April, 1880, a decree of foreclosure was entered in the foreclosure suits in pursuance of the terms of this agreement, which by its terms was a foreclosure of the four trust deeds on sublots 1, 2, 4, and 5, respectively, and of the trust deed securing the $2,875 (Taylor's individual debt) on the whole four lots, and a sale was directed to be made by one of the masters of the court of the sublots 1, 2, 4, and 5 to pay the amount found due by said decrees on the respective trust deeds; the lien of the several trust deeds on the premises, covered by them, respectively, being found by the decree to be subject to the prior mechanic's lien established by the decree in the Gilsdorff Case.

"A sale was made under this decree on the 16th of June, 1880, and each house and lot sold to the bank, and certificates of purchase given by the master to the bank as such purchaser; and afterwards, to consummate the settlement made with the guardian ad litem of the infant children, the certificate of purchase for lot 2 at such master's sale was assigned to the guardian ad litem, and by him assigned to the six children then born, and a deed was in due time made to them by the master, and a deed was also made to the bank of lots 1, 4, and 5. After the affirmance by the supreme court of the decree in the mechanic's lien case, the bank purchased the decree in that case, and was the owner of such decree at the time of the entry of the decree in the foreclosure case, and at the time of the alleged compromise and settlement; and on the 15th of July, 1881, a sale was made under the mechanic's lien decrees, and the defendant H. H. Thomas, who was then the president of the bank, became the purchaser of the three sublots 1, 4, and 5; and it is admitted that this purchase was made by Mr. Thomas for the bank, and that he now holds the title solely for the bank, and has no individual interest therein. It also appears that the three oldest children were made defendants to the bill for the restoration of the deed of trust under the burnt records act, and appeared and answered by guardian ad litem; that the four oldest children were made parties to, and appeared and answered by guardian ad litem in, the bill for the appointment of a new trustee, and that under the mechanic's lien suit the four oldest children were made parties defendant, and appeared and answered by guardian ad litem. But the supreme court, in the suits brought by Julia S. Taylor against the bank to set aside the decree in the mechanic's lien suit, so far as it affected lot 3 in said subdivision, found that there was no service upon the infant defendants in the mechanic's lien case. It also appears that the youngest child, Margaret, who is one of the original complainants in this case, was born after the entry of the decree in the foreclosure case. It also appears that all the seven children, born of the marriage of Mr. and Mrs. Taylor, who are parties to the original and cross bills in this case, were minors at the time the original and cross bills were filed."

In the Gilsdorff Case there is in the record no proof of service of process upon the infant defendants, except the recital in the final decree of a finding that "due service of process was had upon all the defendants except the Franklin Savings Bank." On the 20th of July, 1880, following the master's sale under the foreclosure decree, Mulliken, as trustee, and Frank C. and Maria L. Taylor, joined in the execution of a quitclaim deed of lots 1, 2, 4, and 5 to Thomas, as president, for the use of the savings bank. No reference is made to that deed in either the bill or cross bill. The supplemental bill filed by the savings bank in the foreclosure case gave a true and full account of antecedent facts affecting the rights of the parties, including the discovery and contents of the deed of trust. The terms in which the trust was defined, in so far as they are relevant here, are as follows:

"Firstly, for the use and benefit of the said Maria Louise Taylor, and the children of the said Frank C. and Maria Louise Taylor, to be used and occupied by them as a homestead or place of residence, subject, however, to the trusts and uses hereinafter contained; it being, however, expressly provided

and understood that the improvements now standing on said premises may be added to, altered, or removed, and new buildings erected thereon: provided, always, there shall be no lien, incumbrance, or charge created thereby on said premises: and it is further provided that the whole or a portion of said premises may be used for the purpose of deriving a revenue therefrom, as is hereinafter provided, and that a portion only of said premises may be used as such homestead as aforesaid. * * * Secondly, and upon this further trust, namely: The said Ira Scott, or his successors in trust, shall bargain, sell, and convey a portion of said premises for the purpose of procuring funds to build upon and improve the remainder thereof during the joint lives of the said Frank C. and Maria Louise Taylor, upon their joint written request, and such request shall be signified by their joining with such trustee in the execution of the deed or deeds of conveyance: * * * Provided, always, that no charge or incumbrance on said premises, or any portion thereof, shall be thereby created by said Ira Scott or his successors in trust." Thirdly, to the effect, that, after the payment of costs, taxes, and assessments, the income shall be paid to Mrs. Taylor, for her sole use and benefit, during the life of her husband, and that after his death there should be paid to her out of the income the sum of $3,000 annually, and the remainder, if any, to the children.

The burnt records act of this state contains these provisions:

"Said decree of said court, when entered on either of the petitions above mentioned, [i. e. a petition to establish title and petition to establish lien,] shall be forever binding and conclusive, unless an appeal be taken during the term of the court at which the decree shall be rendered, or a writ of error shall be sued out within twelve months from the entry of said decree, in which case the final decree entered in said cause shall be binding and conclusive, as aforesaid, from the entry thereof, except against minors and insane persons. * * * And provided, further, that married women, insane persons, and minors shall have two years after their disabilities are removed to prosecute a writ of error from said decree. * * * And provided, further, that in all decrees against infants, persons of unsound mind, or married women claiming property in their own right, other than right of dower, the decree shall set forth the evidence upon which it is based."

The scope of the suit in which the decree of August 19, 1873, was rendered is sufficiently indicated by the court's finding, which followed closely the averments of the bill, and which, with abbreviations not affecting the sense, was as follows:

"That in and by said deed the premises were conveyed to Ira Scott and his successors in trust, to be held and managed by him and them in trust for the benefit of Frank C. Taylor, Maria Louise Taylor, their children, and the devisees and legatees of the said Frank C. Taylor; that by the terms and provisions of the trust conveyance, among other things, the said Scott and his successors in trust were authorized and empowered to build upon and improve the premises, or any part of the same, for the purpose of deriving a revenue therefrom, and to borrow money for the purpose of making the improvements, and to secure the payment of the same by executing on the premises, or any portion thereof, mortgages or trust deeds, and also to sell a portion of the premises for the purpose of raising funds to improve the trust estate; that from the date of the trust conveyance, during and until the great fire of October 8th and 9th, the said Maria L. Taylor occupied the premises as a homestead, under the trust conveyance, in accordance with the terms thereof; that during that time the entire improvements of the premises consisted of the residence and outbuildings attached thereto; that by the fire all of the improvements on the premises were destroyed, and the said Frank C. and Maria L. Taylor, with their children, were thereby left without a home, and were also in other ways losers to such an extent that they could not suitably provide for their necessary wants and those of their children, and pay the taxes and assessments laid and assessed on the premises, without in some way making the trust estate available as a source of revenue; that the premises were situated in a portion of the city of Chicago that had been and continued to be valuable for residence purposes, and that good, careful, and judicious management of the trust estate, for the best interests of all concerned therein, required the erection thereon of a block of five first-class residences;

that owing to the destruction of the trust conveyance and the public records, it was impossible for the trustee either to sell and convey the premises, or any portion thereof, or to borrow money upon the same as security, until the terms of the trust should be declared by the decree of some court having competent jurisdiction in such matters, which at that time could not have been had without great delay, and that such delay would have operated greatly to the prejudice and damage of the trust estate; that to protect and preserve the estate, and acting for the best interests of all concerned, the said Frank C., as agent of Maria L. Taylor, and at her request, borrowed a large sum of money, and with the same erected on the premises a block of five marble-front residences, one of which is now occupied by said Maria L. Taylor and her family as a homestead under the trust deed; that the improvements on the premises were commenced in the month of August, 1872, and completed in the spring of 1873, and were wise and judicious; that Maria L. Taylor, through her husband as her agent, had expended in said improvements and the erection and completion of said block of residences the sum of $53,700; that the money was judiciously and wisely expended, and that the fair value of the improvements is the sum of $53,700; that it is advisable and necessary, for the best interests of the trust estate, to sell and convey one or more of the houses so erected on the premises, and to borrow enough money otherwise upon the trust estate to pay for the improvements the said sum of $53,700. It was decreed that the said Charles H. Mulliken, who was therein appointed successor in trust, be 'authorized and empowered, out of any funds arising from the sale of said premises or any part thereof, or from any loan made for that purpose, to pay and discharge to the said Frank C. Taylor and Maria L. Taylor all the costs of said improvements as aforesaid advanced and paid by them or either of them, not to exceed in amount the sum of $53,700.' "

Besides the mortgages to the Savings Bank, Frank C. and Maria L. Taylor, and Mulliken as trustee, on the 10th of November, 1873, joined in a conveyance of sublot 3 to Julia S. Taylor, wife of a brother of Frank C. Taylor, for $15,000; and in the case of Bank v. Taylor, 131 Ill. 376, 23 N. E. Rep. 397, the state supreme court upheld the sale, and declared that the purchaser was not bound to look after the application of the purchase money.

This suit was commenced December 1, 1884, in the superior court of Cook county. The bill then exhibited was confined to an attack upon the title of the appellant the Franklin Savings Bank to lots 1, 4, and 5 of the property in controversy, as derived through the sale made under the mechanic's lien decree in favor of Gilsdorff and others. The suit was removed upon the petition of the appellant to the circuit court of the United States for the northern district of Illinois, where no steps were taken in it until the 18th of March, 1887, when the scope of the action was enlarged, and the relation of the parties changed, by the filing of an amended bill in which Robert C., Katharine, and Margaret Taylor became complainants, and the other children, Frank C., Maria L., Josephine S., and Alexander, who had been plaintiffs in the original bill, were made defendants. They at once filed a cross bill, adopting the averments of the amended bill, and praying substantially the same relief. The amended bill reviewed the various steps taken in relation to the trust estate from the creation of the trust in June, 1872, to the filing of the original bill, December 1, 1884, and in substance asked, and by the decree it was granted—First, that the decree of foreclosure in the federal court, and the master's sale and conveyances made under it, be declared void as to the interests of the complainants in the premises; second, that the two decrees of the superior court of Cook county, entered upon bills brought for the review of its previous decrees, be declared absolute in respect to the claims of the savings bank; third, that the Gilsdorff decree in the circuit court of Cook county, be declared fraudulent and void, and likewise the deed of the master in chancery made in execution of that decree; fourth, that a new trustee be appointed as successor to Scott in the original deed of trust; fifth, that the Franklin Savings Bank be required to account for and pay over to the new trustee the proceeds of the rents and profits of the trust property while it was in the bank's possession.

In respect to the Gilsdorff decree the ground of review or attack is stated to be that it "was procured by misrepresentation and imposition upon said

circuit court, in this: that the said court was misled and imposed upon by the production, as evidence, of said pretended deed of trust as confirmed by the superior court." There is in the amended bill no charge of suppression or fraudulent concealment of the trust deed. The averments touching the point are: "That the original deed had been lost or mislaid and could not be found;" "that it was not true, as alleged in said bill, [on which the burnt records decree was obtained,] that said deed of trust had been destroyed by fire; but it was true, as your orators believe, that at the time said suit was pending in the superior court the said deed was lost or secreted, and could not be found;" "that some time after the entry of the said decrees in the superior court the said deed of trust * * * was found;" and that in the proceedings for the review of those decrees the court found "that it was newly-discovered evidence, not possible for the complainants in review to have produced at the hearing of said original bills of complaint," and thereupon ordered that the original decrees be set aside and annulled, but with a proviso to the effect that the rights of the Savings Bank had not been considered and were not determined.

In respect to the decree of foreclosure in the circuit court of the United States the allegations are to the effect that the guardian ad litem acted without authority in entering into an agreement with the Savings Bank for a compromise and settlement of the suit; that the settlement was a fraud upon the rights of the complainants and upon the court, for which the foreclosure decree and sale ought to be set aside and declared void as to the complainants; and, "further, that the decree is erroneous, and should be reversed and set aside for many apparent errors and imperfections, insomuch as it appears by the supplemental bill that said Mulliken, as successor in trust to the said Ira Scott, had no power or authority to incumber the trust estate, nor to create a lien or charge upon the land."

The respective positions of the parties, and the views which prevailed, are shown in the following extracts from the opinion below:

"The contention on the part of the complainants is that the four trust deeds given by Mulliken, trustee, with the consent of Mr. and Mrs. Taylor, on the four houses and lots, and also the decree in the mechanic's lien case, are all void and inoperative as against the complainants and cross complainants, under the clause in the deed of trust to Scott which prohibited the creation of any lien, incumbrance, or charge on the trust premises; that they are not bound by the decree in the foreclosure case because the decree was by consent, and they were not competent to give such consent; and that the decree in the mechanic's lien case did not bind the infant defendants therein because there was no service of process on them, and also because such decree was obtained by imposing upon the court the false deed established by the decree in the burnt records act,—of all which, and of the true terms of the genuine trust deed, it is claimed the petitioners in the mechanic's lien case, and the bank and its president, Mr. Thomas, were bound to take notice. * * * It is insisted on the part of the defendants that the decrees in the burnt records act case, and in the case appointing a new trustee, fully empowered the making of the five trust deeds involved in the foreclosure suit; that four of the children were parties to those suits, and bound by the terms thereof, and the other unborn children were bound by representation; and that those decrees remained in full force at the time such trust deeds were made.

"It may be, and probably is, true, that so long as those decrees, as well as the decree in the mechanic's lien case, are allowed to stand, they are binding by their terms upon the infant defendants as well as upon the adult parties; but the essential question is, can these infants attack those decrees, and have them set aside as against parties who acted under them while they were in force? I consider the law to be well settled that the infants can, by an original bill in the nature of a bill of review, attack any decree entered against them during their infancy, and have it set aside for fraud or error of fact. Daniell, Ch. Pr. 169, 170; Rogers v. Smith, 4 Pa. St. 93; Mills v. Dennis, 3 Johns. Ch. 367; Massie v. Donaldson, 8 Ohio, 377; Mathes v. Dobschuetz, 72 Ill. 438; Gooch v. Green, 102 Ill. 509; Lloyd v. Kirkwood, 112 Ill. 337; Kuchenbeiser v. Beckert, 41 Ill. 172; Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. Rep. 638. It is also well established, I think, by the authorities, that any consenting decree entered against a minor is not binding, and can be attacked

by original bill for the purpose of setting it aside; and in support of this practice no other authority need be cited than that of Kingsbury v. Buckner, above cited. Assuming, as I do, the right of these minors to attack this bill of foreclosure by their bill, I think the court must now assume that, had all the facts touching the validity of the securities involved in that suit been presented to the court, the court must have held that the securities sought to be foreclosed and enforced in that proceeding were invalid, and have dismissed that suit for want of equity as against the infant defendants; and as the court was prevented from doing so, and was led into making an inequitable decree by the unauthorized agreement of the guardian ad litem, it will in this suit, now brought by the minors themselves, enter such decree as should have been entered in the original foreclosure case. As to the Gilsdorff decree, and the sale under it, I can see no reason why it is not properly the subject of attack by this bill. Undoubtedly, at the time that decree was rendered, the court properly assumed that it was justified by the deed of trust, as restored by the decree of March 29, 1873, under the burnt records act; but that decree was based upon a most palpable error of fact, of which the bank and its president were charged with notice, and it seems to me the right of these infants to set aside that decree, and all that has been done under it, is palpable. To set aside these sales under the foreclosure and mechanic's lien decrees will, without doubt, work a hardship upon the bank, that has invested a large sum of money on the faith that the four $9,000 mortgages were valid; but the court cannot escape the conclusion that there was ample constructive notice that the trustee had no power to make those mortgages, as well as that no valid mechanic's lien could be created on the trust estate, and to hold that these incumbrances are valid as against these children would make a precedent for defeating the rights of many more minor children."

Swift, Campbell, Jones & Martin, for appellants.

Robert B. Kendall, (Charles E. Pope and George R. Grant, of counsel,) for appellees.

Before HARLAN, Circuit Justice, WOODS, Circuit Judge, and JENKINS, District Judge.

WOODS, Circuit Judge. The rule that a decree against infants may be attacked by original bill for error of fact or mere mistake, as well as for fraud, is subject to an important qualification. Thus, in Lloyd v. Kirkwood, 112 Ill. 338, the court, after stating the general proposition, said:

"The rule thus established is, of course, subject to the qualification that the decree of a court having jurisdiction of the subject-matter of the suit, and the person of the infant against whom it is rendered, will not be thus set aside as against third parties who have in good faith acquired rights under it; but as against original parties to the suit, and their legal representatives, the rule as above stated will be enforced."

The essential question before us, therefore, is whether or not the savings bank, under any of the decrees mentioned, had acquired rights which ought to be protected, notwithstanding the subsequent discovery of the error upon which the decree was founded.

There are two reasons why that protection cannot be claimed directly under the decree in the burnt records case. First, the bank was a party to that procedure; and, second, by the terms of the statute under which the decree was taken, it was made "binding and conclusive, except as against infants and insane persons;" implying necessarily, it would seem, that as against minors the de-

cree had the effect only of prima facie evidence, although, so long as the original deed remained undiscovered, it was likely to be regarded and acted upon as conclusive.

The second decree, rendered August 19, 1873, is of more significance in the discussion. By it a new trustee was appointed, and in effect, though not in direct terms, authorized to obtain money either by selling or mortgaging the trust estate for the purpose of paying for the improvements which had been put upon the premises; and under that authority the loans were made, and the trust deeds or mortgages executed, which were the principal source of the appellant's claim of title. Though obtained by use of the first decree, as evidence of the provisions of the trust deed, and on that account subject to be reviewed and set aside, the decree was on its face regular and valid, and as the decision of a court of general jurisdiction it was, until set aside, binding upon all the parties to the same extent as any other decree or judgment, and was available for the protection of any who had acted upon it.

It was not, as has been contended, a supplemental decree, obtained in aid of that under the burnt records act, and therefore, like that, neither conclusive upon minors nor a source of protection to the bank. The purpose of the first procedure was fully accomplished in the reinstatement, as of record, of the provisions of the trust deed, and no supplement was needed. Besides, the second decree was procured upon an independent bill, which, while it recited the fact of the rendition and the scope of the former decree, contained original and direct averments of the execution and provisions of the lost deed; so that, if the reference to the former decree had been omitted, neither the character nor sufficiency of the bill would have been affected.

While it is true that this decree was founded on an error of fact in respect to the powers of the trustee, it was not a palpable error, nor one of which the bank and its president were charged with notice. So long as the trust deed remained undiscovered, not only was the error not evident; there was nothing to suggest its probable existence. In substantial compliance with the requirement of the burnt records act that a decree under it against minors should set forth the evidence on which it was based, the master's report, upon which the decree of March 29, 1873, was rendered, contained the full and explicit testimony of Frank C. Taylor and other witnesses to the effect that the copy embodied in the decree was a true copy of the trust deed, and under the circumstances there was neither reason for suspecting nor means of finding out the contrary; and yet it is insisted, and it is the pivot of the argument for the appellees, that the Savings Bank all the while had constructive notice, and should be treated as if it had known that under the recorded and true deed of trust the trustee had no power to execute mortgages or to create liens. It would not be so held in a court of law, even. It is of course true that that constructive notice which results from the recording of a deed continues in force though the record be destroyed. That is a rule which has its proper and necessary place in public policy, but it is not of universal or inflexible application.

The record of a deed, when produced intact, is not final or conclusive proof of the contents or tenor of the original instrument. It may be contradicted by the production of the deed or by other evidence; and it follows necessarily that the force of a record, as constructive notice, cannot prevail over that presumption of absolute verity which inheres in the judgment or decree of a competent court. Whether the record has been destroyed or remains unharmed, a lawful decree, declaring the terms or tenor of an instrument to be different from the record of it, supersedes or overcomes the latter as evidence; and upon the same principle the decree of August 19, 1873, superseded the destroyed record of the trust deed, or, as it may be better to express it, the decree became conclusive evidence of what that record had shown, and of the actual terms of the deed. It was in recognition of this fact that it was deemed necessary, after the missing deed had been found and re-recorded, to bring bills of review, in behalf of the infant parties, to obtain orders of the superior court setting its decrees aside; and accordingly they were set aside, except that the rights of the Savings Bank were not determined. Whether or not the same parties should be allowed, even by original bill, to make a second attack upon these decrees for the same cause, has not been mooted, and we do not stop to inquire.

But, proceeding on the assumption that the second decree was one which should not be set aside to the injury of third persons, it is insisted that to the extent of the $30,000 first loaned to Taylor, which, with accrued interest, became pro tanto the consideration of the notes and mortgages which were foreclosed, the Savings Bank parted with no value upon the faith of that decree, and therefore can claim no protection under it. The position is not tenable. The note given by Taylor for the first loan and the trust deed executed by him and Mrs. Taylor to secure the debt were surrendered and released. It is not claimed that these were without value. Taylor still had credit, and Mrs. Taylor, by reason of her right to receive the income of the trust estate, had an equitable interest, which doubtless was subject to the mortgage. Blanchard v. Blanchard, 1 Allen, 225; Van Rensselaer v. Read, 26 N. Y. 558; Monarque v. Monarque, 80 N. Y. 320. Besides, the debt was due, and upon the new loan an extended credit was given. Upon these facts the bank, being without knowledge of the actual powers of the trustee, was entitled to rely, and it is to be presumed did rely, on the authority declared by the decree under which the trustee assumed to act. This conclusion, however, does not rest upon the doctrine of Swift v. Tyson, 16 Pet. 1, Railroad Co. v. National Bank, 102 U. S. 14, and like cases, concerning the transfer of negotiable paper in payment or for the security of a pre-existing debt. That doctrine is peculiar to negotiable paper, and does not apply to transfers for like purposes of ordinary chattels or interests in real estate. It is so held in the case of Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. Rep. 679, where the rule declared by Judge Story in Morse v. Godfrey, 3 Story, 389, is quoted with approval. According to that rule it is not enough that there shall be given "a simple collateral

security for an old indebtment or liability of the parties;" the one claiming to be an innocent purchaser or mortgagee of personal or real property "must not only have had no notice, but he must have paid a consideration at the time of the transfer, either in money or other property, or by a surrender of existing debts or securities held for the debts and liabilities." "There must be some new consideration moving- between the parties, and not merely a new security given for the old debts or liabilities, without any surrender or extinguishment of the old debts and liabilities or the old securities therefor." That one who merely receives a mortgage of land for a pre-existing debt does not become a purchaser for value was held or recognized in Busenbarke v. Ramey, 53 Ind. 499, and Straughan v. Fairchild, 80 Ind. 598; but in Gilchrist v. Gough, 63 Ind. 584, it was held to be sufficient for that purpose that, in consideration of the new security, the time for the payment of the debt had been extended. In Illinois the payment, or security, or extension of the time of payment, of a pre-existing debt has been declared sufficient. Butters v. Haughwout, 42 Ill. 18; McIntire v. Yates, 104 Ill. 491, 501; Bank v. Cheeney, 87 Ill. 602. And in Glidden v. Hunt, 24 Pick. 221, it was decided that when a creditor made a further loan to his debtor, and took a mortgage to secure both loan and debt, he became a mortgagee for value to the full amount of both, because the presumption was that he had parted with his money in order to obtain protection for the antecedent advances, as well as for those made at the time. We need not go so far. In the present case all the elements of good faith mentioned in the cases cited were combined. The old obligation and security were surrendered and released; the time of payment was extended; an additional sum was loaned; and in fact there was a change of debtor, the trustee becoming the principal in the new obligations, and Taylor and wife sureties only.

It follows that, regardless of the compromise agreement, the Savings Bank was entitled to the decree of foreclosure, which it obtained, for the full amount of its demands, and that upon all the facts alleged in the bill no valid reason is shown for setting the decree aside, or for annulling the mortgages on which it was based. Error is not apparent on the face of the record; and, in view of our conclusion that the mortgages were valid as against all who were bound by the decree of August 19, 1873, the objection that the guardian ad litem in the foreclosure case had given unwarranted consent to a compromise loses significance, if, indeed, it does not bring support to the decree, because by the compromise there was saved to the children one fourth of the property, and a corresponding portion of accrued rents, which otherwise in all probability would have been forfeited to the bank. It is to be observed, too, that upon its face it was not a consent decree. The guardian ad litem, though he had withdrawn a special answer, had filed another in the customary form. No fact was admitted; no proof waived; and every essential fact shown in the special answer, which was withdrawn, and all the facts on which the claims of the infants are now asserted, were distinctly set forth in the appellant's supplemental bill, upon which the decree

was granted. It is not alleged, nor has it been suggested, that any fraud or deceit was practiced, to keep from the court a knowledge of the facts so averred. Consequently, at the hearing below, it was not only not to be presumed, it would not have been competent to prove, that in the foreclosure case the court proceeded to a decree without knowing the contents of the bill; or that had the facts touching the validity of the securities sought to be foreclosed and enforced been presented to it, the court would have held the securities invalid, and dismissed the suit. Besides, it is in proof that after the Savings Bank, in compliance with the compromise, had assigned its certificate of purchase, at the foreclosure sale, of one of the lots to the guardian ad litem, the latter in a petition for instruction, to which he made his wards defendants, reported the settlement and the relevant facts to the circuit court of Cook county, and that court, after a hearing at which the infants were represented by a guardian ad litem appointed for the purpose, ordered a transfer of the certificate and of the property to the children in esse, with a provision that after-born children should be admitted to share with those named; and, the certificate having been transfered as ordered, the master in the foreclosure case reported to the court for approval a deed for the conveyance of the lot described directly to the Taylor children, by name, and that deed the court approved. It is evident, therefore, that the compromise agreement received the deliberate approval of the local circuit court, which as a court of chancery had cognizance of the affairs of minors; and, by necessary implication from the last order made in the case, it had the approval of the court in which the decree of foreclosure was obtained. If that decree had been taken upon default of the infant defendants, or if upon its face it appeared to have been taken in pursuance of a compromise which was not shown to have had the explicit approval of the court, it may be that it would have been subject to review without inquiry into the merits of the compromise; but when, without impugning the fairness of the proceedings in court, it is proposed to set aside a decree which upon its face is in all respects regular, because of an alleged agreement or consent of the guardian ad litem which is not referred to in the record, we are strongly inclined to think it should be alleged and proved, not only that the agreement had been made, but that it was not beneficial to the infants concerned, or for some other reason ought not to have been made. See Walsh v. Walsh, 116 Mass. 377. The maxim that equity regards substance rather than form would seem to be applicable to such cases.

Concerning the Gilsdorff decree a single question is presented. When the contracts were made, and the work done and materials furnished, which were the foundation of the liens thereby declared, the decree in the burnt records case not having been entered, the parties were chargeable with constructive notice, and when the Savings Bank took an assignment of the decree it had actual knowledge, of the provisions of the trust deed. There is, therefore, no reason why that decree is not reviewable in this action for the error of fact upon which it was founded, unless it be because it had been affirmed by the supreme court of the state, without the right being reserved or leave

obtained of that court to bring the suit. Upon that question, in South-ard v. Russell, 16 How. 547, 570, it is said:

"The better opinion is that a bill of review will not lie at all for errors of law alleged on the face of the decree after the judgment of the appellate court. * * * Nor will a bill of review lie in the case of newly-discovered evidence after the publication, or decree below, where a decision has taken place on appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the court of chancery and house of lords in England, and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in chancery suits."

It is insisted that this is a dictum, and ought not prevail against the weight of authority and reason to the contrary. But it is quoted with approval in Kingsbury v. Buckner, 134 U. S. 650, 671, 10 Sup. Ct. Rep. 638; and we are not disposed to disregard it. We consider it applicable, too, to a decree which has been affirmed, as well as to one entered upon the order of the appellate court. In Durant v. Essex Co., 101 U. S. 555, it is said:

"On a mandate from this court affirming a decree, the circuit court can only record our order, and proceed with the execution of its own decree as af-firmed. It has no power to rescind or modify what we have established."

And the fact that the relief is sought by an original bill instead of bill of review proper should, we think, make no difference. The ground of relief is the same whether it be sought in one way or the other. Even when there has been no appeal, the rule is that the granting of a bill of review for newly-discovered evidence is not a matter of right, but it rests in the sound discretion of the court. "It may, therefore, be refused, although the facts, if admitted, would change the decree, where the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause unadvisable." Story, Eq. Pl. § 417. Accordingly, in some jurisdictions, though not in all, special leave of court must be obtained for bringing the bill.

Concerning the objection that the Gilsdorff decree was entered without service of process on the infant defendants, it may be remarked that, if the decree could be attacked on that ground in any court except that in which it was rendered, it has not been attempted in the bill before us, which alleges nothing on the point. The court in which the decree was obtained being one of general powers, the presumptions are in favor of its jurisdiction in any matter of which it has taken cognizance; and, besides, this decree, as it is presented in the record before us, shows a finding that process had been duly served. It is true that in the reporter's statement of facts preceding the opinion in Bank v. Taylor, 131 Ill. 376, 23 N. E. Rep. 397, it is said that "no summons was ever served upon either of the defendants;" but that statement is not evidence here, and would not be if it had been made by the court instead of the reporter. It is, moreover, inconsistent with the opinion and judgment of the court, in which, while it is held that the decree was not binding upon the appellee Julia S. Taylor, because she was not a party, it is said that it was "of course * * * res judicata as to the parties then before the court;" and when the case was directly before that court

on appeal—Taylor v. Gilsdorff, 74 Ill. 354—the chief dispute was whether "the interest in remainder in the estate held by the trustee for the heirs of Taylor" could "be subjected to a mechanic's lien." But, if none of the children had been served with process, the question was not presented, and, it is to be presumed, the court would not have considered it, and would not have affirmed the decree; since, if process had not been served, the decree was, in respect to the minor defendants, void upon its face. It follows that the title of the Savings Bank, acquired through the sale under the mechanic's lien decree, should not, upon the facts averred in the bill, have been disturbed.

The question remains whether or not the children born after the rendition of any of these decrees are bound thereby. If so, it is because they are to be considered as having been represented in the suits by those who were parties. Upon that subject we quote from the opinion in McArthur v. Scott, 113 U. S. 340, 391, 400, 5 Sup. Ct. Rep. 652, where the authorities were reviewed:

"The general rule in equity, in accordance with the fundamental principles of justice, is that all persons interested in the object of a suit, and whose rights will be directly affected by the decree, must be made parties to the suit. Exceptions to this have been admitted, from considerations of necessity or of paramount convenience, when some of the persons interested are out of the jurisdiction, or not in being, or when the persons interested are too numerous to be all brought in; but in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all."

"The cases in courts of general chancery jurisdiction, cited in behalf of the defendants, * * * naturally range themselves in several classes. Some of them were of mere changes of investment, leaving undiminished the interests of all parties in the property in its new form. * * * To the same class belong suits for partition, which are either for a division in severalty of lands before held in common, or else for a sale of the whole land, and a division or investment of the proceeds for the benefit of those who, but for the sale, would have had interests in the land. * * * Another class of cases is that of creditors, who are entitled to present payment of their debts, whoever may be the future owner of the estate. For instance, in a bill to enforce a debt charged upon real estate devised to one for life, with contingent remainder to his unborn son, the executor and the tenant for life are sufficient parties, because, as was said long ago by Lord Hardwicke, if there is no one in whom the estate of inheritance is vested, 'it is impossible to say the creditors are to remain unpaid, and the trust not to be executed, until a son is born. If there is no first son in being, the court must take the facts as they stand.' * * * In some other cases, when all the interests are legal, and not equitable, the owner of the first estate of freehold, representing the whole estate, and identified in interest with all who come after him, sufficiently represents those yet unborn. In case of an estate tail, for instance, Lord Redesdale held it to be sufficient, in order to bind contingent remainder-men, to bring before the court the first tenant in tail, (although an infant, incapable at law of barring remainder-men,) and, if no tenant in tail in being, the first person entitled to the inheritance, and, if no such person, then the tenant for life. But the reason assigned by that great master of equity was ' that where all the parties are brought before the court that can be brought before it, and the court acts on the property according to the rights that appear, without fraud, its decision must of necessity be final and conclusive.' Giffard v. Hort, 1 Schoales & L. 386, 408; Calv. Parties, 55- 60. The necessity of the case being the only reason for this, it follows that where the successive estates are equitable, and supported by a legal estate devised in trust, the trustees also are necessary parties. Hopkins v. Hopkins. West Ch. 606, 619, 1 Atk. 581, 590; Cholmondeley v. Clinton, 2 Jac. & W. 1,133; Mul-

lins v. Townsend, 5 Bligh, N. R. 567, 591, 2 Dow & C. 430, 438; Ex parte
Dering, 12 Sim. 400; Calv. Parties, 253, 327."

By the deed of June 13, 1871, the entire legal estate was vested in
the trustee, and the present beneficial interest in Mrs. Taylor, the
rights of other beneficiaries being all remote and contingent.  It is
to be observed, too, and in this the case may be distinguished from
Breit v. Yeaton, 101 Ill. 252, the trustee, with the consent of Mrs.
Taylor and husband, had power "to sell and to give discharges for
the purchase money and for the rents and profits of the estate." Bank
v. Taylor, supra.  So that if this trust had been created by devise,
instead of deed, it would be literally, as it is essentially, within the
forty-ninth equity rule of the Supreme Court, by which in such cases
the trustee represents the beneficiaries, who need not be made par-
ties, unless at the hearing the court shall require it.  In Breit v.
Yeaton, supra, cited in behalf of the appellees, a marriage settlement
had been made whereby the property of the future wife was con-
veyed to trustees for the benefit of the husband and wife during their
joint lives, and for the benefit of their children after the death of the
wife.  After the birth of one child the husband and wife brought a
bill making the trustees, only, parties defendant, seeking to incorpo-
rate into the marriage settlement certain powers of sale which it did
not contain in its original form.  The original property (certain
stocks or bonds) was subsequently sold under the power thus intro-
duced, and the proceeds invested in lands belonging to the hus-
band, and of which the husband subsequently repossessed himself
by conveyance from the trustees.  The suit was to compel a con-
veyance to the heirs at law, including after-born children, and
for partition.  Treating the question of parties as if the interests
involved were all legal, the court said:

"Counsel for the plaintiffs in error seem to concede that J. Southgate (the
child in esse) should have been made a party, but contend that it was com-
petent to render a decree in that proceeding, binding upon those not in being,
and they cite Story, Eq. Pl. §§ 145, 792, where it is said: 'As it is sufficient
to bring the first tenant in tail before the court, if in being, whether he be
plaintiff or defendant in the suit, so, if there be no such tenant in tail in being,
the first person in being entitled to the inheritance should be made a party,
and, if there be no such person in being, then the tenant for life; and in such
cases the decree made will bind the other persons not in being.' This is upon
the principle that where the interest of one person is involved in that of an-
other, and that other possesses the legal right, so that the interest may be
asserted in his name, it is not necessary to bring both before the court.
Marshall, C. J., in Hopkirk v. Page, 2 Brock. 42.  Manifestly, then, the rule
can have no application here.  There is here no prior estate of inheritance,
and the interests of the heirs at law are not involved in that of another,
but, on the contrary, are adverse to all other interests to be derived under and
by virtue of the power.  The decisions hold that the heirs at law, in cases like
the present, are purchasers, and no decree will affect their rights to which
they have not been made parties."

The quotation from Story, manifestly, is applicable only when
the interests are legal and not equitable; and of the cases cited
in support of the last proposition one only is explicit upon the point.
In Parks v. White, 11 Ves. 219, it is said, concerning a marriage
settlement which provided contingent remainders for children, that
the parents took as purchasers for the children; but in none of them

is anything said upon the subject of parties by representation. In Graham v. Houghtalin, 30 N. J. Law, 552, there is a dictum to the effect that the rights of the unborn were not, and could not have been, affected by the decree there in question; but the point ruled was that the decree was void, even as against children in esse who were parties, because the court was without jurisdiction of the subject-matter. Conceding that the beneficiaries of contingent interests take as purchasers, and that they should be made parties to any procedure designed to affect their rights, it does not follow that unborn beneficiaries may not be parties by representation.

While it is true that the interests of those who are to share an estate or fund are in a sense adverse, inasmuch as every addition to the number of participants diminishes the share of each, yet when the litigation is not between the members of a class, but between the class as a whole and other parties claiming adverse rights, it is evident that a defense made by or in behalf of one of the class must inure to the benefit of all the members alike; and in such cases, where the rights of unborn persons are involved, it is not unreasonable that they should be deemed to be represented by the living parties who are identified with them in interest. But when, as in this case, the successive interests are all equitable, and supported by a legal estate devised or granted to a trustee, the latter is an indispensable party, and when before the court may well be regarded, we think, as representing, for the purposes of the suit, the remote and contingent interests of beneficiaries who cannot be joined. Certainly the representation ought to be deemed sufficient when the trustee, and all in esse of the class to which the unborn belong, are before the court. If Mrs. Yeaton, in the case referred to, could not, as against unborn and unbegotten children, have the alleged mistake in her antenuptial agreement corrected, then as against such parties how could a decree be obtained for the annulment of a forged deed, or one procured by duress or fraud? No doctrine or rule of practice can be sound or tolerable which involves such possibilities.

The further objection is made that both in the burnt records case and in that for the appointment of a trustee it was alleged in the petition or bill that the children made defendants were the only ones interested; that the allegation was not denied; and consequently the court was not called upon, as it should have been, to consider whether or not the interests of unborn children were properly represented. But the provisions of the trust deed whereby those rights were created were fully and fairly set forth in each case, and, as has been already said in another connection, it is not to be supposed that the court entered the decrees without knowing the contents of the bills upon which it was proceeding. In respect, however, to the second decree, rendered August 19, 1873, it should be noted that while Scott and Peabody, the trustees appointed by the deed, were made defendants, it was alleged that they had resigned, and were refusing to act further as trustees. They were therefore only nominal parties, and in fact they did nothing in the case which was, or was intended to be, repre-

sentative of any interest. The proper course, we think, for the court to have taken under the circumstances, was first to appoint the new trustee and cause him to be made a party, and then to proceed with the case in the regular order. As it was, there was only a nominal representative of the legal estate before the court when the decree was entered. In all the other cases the parties necessary for the representation and protection of all interests were properly before the court; and it follows that the title acquired by the appellant through the Gilsdorff decree was good against the present attack of the complainants, who were born after its rendition, as well as against the cross complainants, who were defendants in the case, and in whose name the appeal to the supreme court was prosecuted.

There is a broader and more equitable view of the case which leads to the same conclusion. The value of the trust property as it was left by the fire, according to the estimate put upon it by Frank C. Taylor in his application for the first loan, was $25,000, and there is no evidence that it was worth more. The sublots, afterwards platted, were therefore of the average value of $5,000, and the houses built upon them each cost a little more than twice that sum, making the value of each house and lot about $15,000. That was the consideration for which one of the properties was conveyed to Julia S. Taylor; and according to the decision in Bank v. Taylor, supra, that sale was regular, and the proceeds, it is to be presumed, went to the proper uses of the trust. As the result of the compromise agreement another lot, with improvements of equal value, was conveyed to the Taylor children, and the remaining three lots, worth without improvements not more than $15,000, were conveyed to the Savings Bank. In other words, when this suit was brought, as a result of the transactions complained of, the trust estate had been enhanced by the sum of $5,000; and the bank, in return for $20,000 of its money expended in improving two lots for the benefit of the appellees, had received three lots worth but $15,000. The aim of the suit is that those lots, with the houses on them, erected at a cost of $30,000, which the bank and its assignors, the mechanic's lien holders, contributed, shall be surrendered to the trustee for the use of the appellees, and that for its outlay of half a hundred thousand dollars the bank shall receive nothing. The proposition involves not merely a hardship to the bank, which, according to the opinion of the circuit court, could not be remedied without making a precedent for defeating the rights of minors; it means, in our opinion, an injustice so unconscionable, in view of all the circumstances, as to make judicial sanction of it at once unnecessary and impossible.

When the trust deed was found, and the mistake made evident, which had prevailed concerning the powers of the trustee, it was doubtless competent, as it would have been plainly just and right, for the parties in conformity with the authority which the trustee had, to convert their loans and mortgages into an outright sale to the bank of a part of the property equal in value to the money received and expended upon the estate; and that is practically what was accomplished by the compromise agreement, and by the conveyances which followed the foreclosure sale, including the deed of quitclaim which

Mulliken, as trustee, and Frank C. and Mrs. Taylor joined in executing to the president of the bank; and, so long as no proffer is made of adequate recompense to the bank in some other mode, there can be, in our opinion, no good reason for disturbing the result,—unless it should be to require a conveyance to the trustee of the lot which was conveyed to the Taylor children, whereby they were given a title in fee simple and a present right of possession, when they were entitled only to the remote and contingent interest defined by the trust deed. That, however, is a matter between them and their mother, in which the bank is not concerned.

If the mortgages to the bank be regarded as void, it is still true that the trustee received and used the bank's money for the purpose of improving the property, or paying for improvements already put upon it under circumstances which not only justified, but required, the expenditure. It was within the trustee's power to make improvements and to sell portions of the property for that purpose; and the fact that the money was obtained and expended without a previous bargain for the sale of any part of the property did not preclude the making of a subsequent contract to that effect. There is nothing in the terms of the trust which forbade it, and, if there were, in view of the mistake, sanctioned by two decrees of court, under which the money was obtained, equity, if it would not have compelled a settlement of the character suggested, certainly should not intervene to annul one which was fairly made by the parties, on terms to which they might in the first instance have rightfully agreed.

On the theory of our conclusion that the mortgages were valid and enforceable, the Savings Bank was never under any necessity, and therefore, possibly, had no right, to seek relief on the ground of mistake; but, on the assumption that for any of the technical objections made to them the mortgages were invalid, we deem it clear that the money obtained of the bank was furnished under such a mistake of fact as to warrant equitable relief, which could have been properly granted, in the way already indicated, by compelling the trustee and Frank C. and Mrs. Taylor to convey to the bank enough of the trust property to liquidate its demands. Between the principal parties—the bank and the trustee—it was plainly a case of mutual mistake; and if there was no mistake on the part of Frank C. Taylor, then his conduct was a fraud upon the bank, which was no less available as a ground of relief. It was upon his testimony, corroborated by other witnesses, that the two decrees of the superior court were procured which declared the authority of the trustee to execute mortgages; and if it be conceded that those decrees were founded upon an error of fact, for which they were subject to be set aside, even as against the appellants or any third party claiming to have acquired rights under them, the very concession demonstrates the mistake, which, within the recognized rules of equity, makes the granting of relief in the manner stated both possible and proper. The decree of the circuit court should therefore be reversed, and the cause remanded, with instructions to dismiss the bill and cross-bill; and it is

*So ordered.*