### THOMPSON NAT. BANK OF PUTNAM, CONN., v. CORWINE et al.

(Circuit Court, S. D. Ohio, E. D. November 9, 1898.)

1. **FRAUDULENT CONVEYANCES—DEEDS TO CHILDREN—CONSIDERATION.**

Deeds executed by an insolvent debtor, who was largely liable as indorser of the notes of a corporation in which he was a large stockholder, conveying property to his children for an inadequate consideration, which was not paid, but was to be paid as might thereafter seem best calculated to delay action by the creditors until the company could pay, were fraudulent as against existing creditors.

2. **SAME—WITHHOLDING DEEDS FROM RECORD—EFFECT ON SUBSEQUENT CREDITORS.**

Where deeds executed by an insolvent debtor to his children for the purpose of protecting the property from creditors holding notes on which he was an indorser were withheld from record, that renewals and new loans might be made, and in the hope that payment might eventually be made by the principal debtor, such concealment was fraudulent, and rendered the conveyances fraudulent as to all debts made or renewed after the execution of the deeds, and before they were recorded.

3. **SAME—SUBSEQUENT MORTGAGEE—BONA FIDE PURCHASER.**

One who in good faith makes a loan on the security of a mortgage of real estate, as against others having a right to set aside the conveyance of such real estate to the mortgagor as fraudulent, occupies the position of a bona fide purchaser, although the proceeds of the loan were paid to him in satisfaction of an obligation of third parties, which was fully satisfied and surrendered. In such case the consideration for the mortgage was not the pre-existing indebtedness, but there was a complete novation of indebtedness.

4. **SAME—RIGHTS OF CREDITORS AND SUBSEQUENT PURCHASERS—MARSHALING OF ASSETS.**

Where a fraudulent grantee made a valid mortgage on the property conveyed, with other property, on a finding by a court of equity that the creditors of the grantor are entitled to set the conveyance aside, the mortgagee will be required to first exhaust the other property covered by his mortgage.

J. W. Mooney and Luther B. Yapel, for complainant.

A. B. Cole, L. M. Jewett, J. W. Moore, and George K. Nash, for defendants.

TAFT, Circuit Judge. The complainant is a judgment creditor of John W. Corwine, in the sum of $5,044, on a judgment recovered November 21, 1894. As such, it files its bill against John W. Cor-

wine, Mary W. Lee, William B. Lee, James D. Corwine, Eliza Corwine, John W. Barger, Kerziah D. Barger, Rachel M. Foster, Jane R. Foster, Peter B. Hayes and George D. Cole, partners as Hayes, Jones & Co., together with certain other judgment creditors of John W. Corwine, who filed cross bills seeking the same relief as the complainant. The purpose of the bill and cross bills is to set aside as fraudulent five deeds and one mortgage. Four of the deeds were executed by John W. Corwine to his four children,—Mary W. Lee, James D. Corwine, Kerziah Barger, and Jane R. Foster. A fifth deed was executed by John W. Corwine to John W. Barger, and the mortgage was executed by John W. Barger to Hayes, Jones & Co. The grounds of fraud set up in the bill are—First, that the consideration paid for the land conveyed was wholly inadequate, and that, at the time of such conveyance, John W. Corwine was insolvent, and the deeds were made to hinder, delay, and defraud creditors; and, second, that the deeds were executed before the debts upon which the judgments of the complainant and cross complainants were contracted, and that they were kept off the record, and the fact of their existence concealed, for the purpose of inducing the complainant and cross complainants to contract their debts, under the belief that John W. Corwine was still the owner of the land conveyed in the deeds complained of. The bill seeks to have the conveyances set aside, and the land subjected to the payment of the judgments of the complainant and cross complainants. The defendants filed answers, denying all fraud, and averring that the conveyances were for full consideration.

A large amount of evidence was taken upon the issues of fact raised, all of which I have read with care. I do not propose to discuss the evidence, because I have not the time. I can only formulate my conclusions from it. I find the facts to be substantially as follows: John W. Corwine and his wife and his four children, three daughters and one son, were the owners in common of 3,462 acres of fine farming land in Pike county, and 284 acres in Ross county, Ohio. Much of it was Scioto river bottom land, which is the most productive land in the state. By a family arrangement, the lands were divided into four parcels, and, by deeds of partition, each child was given an undivided one-half interest in one of the parcels, while John W. Corwine and his wife each retained an undivided one-fourth interest in all of them. At the same time it was arranged that, by their wills, Corwine and his wife should each devise to their respective children the parcels in which they were co-tenants with their father and mother. The father and mother lived with their daughter Kerziah D. Barger and her husband, John M. Barger, upon one of the tracts, near Waverly, Ohio. A rental was paid to the father and the mother for the interests which they had in the property, but the rental was hardly commensurate with the value of the property. It was sufficient to pay for their support. John M. Corwine, the father, was, during the years of the transactions now to be referred to, a man over 70 years of age, and a farmer by occupation. Prior to 1894, he had become interested in the stock of the National Cotton Seed Oil & Huller Company.

This company was organized for the purpose of treating cotton seed. Its principal assets were its patents for machinery used in treating the cotton seed, and a plant at Memphis,. Tenn. Corwine, by purchase, had acquired about $68,000 par value of the stock. He had become associated in the company with several persons from Ohio living in the neighborhood of his home, and with others from the South. Because of his age, and in order to protect this property, which was certain to go to them upon his death, his children assigned John M. Barger, his son-in-law, to the duty of managing his business interests in this enterprise. Barger accordingly became the nominal owner of $5,000 par value of the capital stock of the company, a director, and a member of the finance committee. The duties of the finance committee consisted largely in borrowing money for the purpose of continuing the operation of the plant. The company itself had little credit, and all the money borrowed was obtained by the indorsement of the individuals who were interested in the enterprise. A broker named Lindley, living at Chillicothe, in Ross county, was employed to negotiate the loans upon notes indorsed by John W. Corwine and some half dozen other of the stockholders. The loans were placed by Lindley with various bankers in the state of Ohio, and with banks in other states. In order to effect the loans, he procured from the individual indorsers written statements of the property which they had. He obtained a statement in 1891 from John W. Corwine showing his ownership in the lands here in question, in which he placed their value at $100 an acre, and in which he said he had no debts whatever, and that he was worth over $150,000. In November, 1893, when the indebtedness of the company upon which Corwine was liable as indorser amounted to $200,000, he made another statement, which Barger sent to Lindley, at Lindley's request, in which he described his lands as being worth $100 an acre, and stated that he was worth $100,000. In March, 1894, on the 7th day, the holder of one of the notes on which Corwine was indorser insisted upon its payment; and Barger, by arrangement with Corwine's children, gave a note for $5,000, signed by all of them, with the proceeds of which the company's note was paid. At that time Corwine was known to his children to be insolvent. The children feared that, unless the company was sustained and matters were tided along, the indebtedness of Corwine could not be renewed, and that execution would be levied upon his undivided one-fourth interest in the property held by them. For the purpose of delaying the creditors until the company could pay off its own debts, the children agreed among themselves to take care of about $30,000 of the outstanding notes, and, in order to protect themselves should the prospects of the company grow worse and disaster follow, each child took a deed from the father of his undivided one-fourth interest in the land in which the child held an undivided one-half interest, in consideration, as recited in the deed, of $7,500. When the deeds were executed and delivered by the father to the children, neither the children nor the father knew what debts were to be paid. The arrangements were of the most indefinite character. The execution of the plan was committed to

Barger and Lee, sons-in-law. The deeds were turned over to Lee. Afterwards, upon consultation between Lee and Barger, the deeds were withheld from record, from March 12, 1894, until November 10th, of the same year. Two months after the execution of the deeds, Barger procured the drawing of a contract between John W. Corwine and his children, and dated it back to March 12, 1894, the date of the deeds. In the contract he attempted to set out the particular debts the assumption of which was to form the consideration of the deeds. This statement is admittedly incorrect in three of its items, and was certainly nothing but the fabrication of evidence to support the deed. Before the 10th of November, when the disaster came, the children had taken care of more than $30,000 of the indebtedness. They had paid off, in addition, a $5,000 note. On the 9th day of November, the plant of the huller company was burned. This attracted the attention and excited the fears of some of those who held notes of the company. Rockhold, Brown & Co. took judgment upon their cognovit note against Corwine as indorser, and issued execution to be levied upon his lands. Barger, learning of this, attempted to dissuade them from doing so. He was unsuccessful; but, before the execution could be levied, he procured the deeds executed by Corwine to his children from Lee, and placed them upon record, on the 10th day of November.

I find, first, that the reasonable value of the lands conveyed by Corwine to his children was not less than $50,000; that the deeds were the result of a secret family arrangement, the purpose of which was, in the alternative, either to tide over the financial stringency of the huller company, and thus, if possible, to save the father from suit upon his indorsements, or, in case of disaster, by a conveyance of the lands to the children at an indefinite price, but in any case less than two-thirds of their actual value, to prevent his creditors from subjecting them to the payment of his debts, and that, therefore, as to the indorsed notes then existing, of which Mary M. Lindley, a cross complainant, holds one for $5,000 in judgment, the deeds were actually fraudulent. It is not a case of constructive fraud, and the case of Jamison v. McNally, 21 Ohio St. 295, has no application.

I find, second, that the four children entered into the arrangement at the suggestion of John M. Barger, and that they committed its execution to him, and are civilly responsible for his acts in this behalf; that it was essential to the plan to keep the deeds from record, for otherwise it would have been impossible to secure renewals of the great number of notes outstanding; that the deeds were accordingly concealed at a time when Barger knew that renewals and new loans were being secured on the faith that Corwine owned the lands which he had now conveyed to his children; that the concealment was therefore fraudulent, and renders the deeds fraudulent as to all loans which were made or renewed between the date of the execution of the deeds, March 22, 1894, and November 10, 1894; and that the judgments of complainant and cross complainants are all founded on notes of this class, except the judgment of Mary M. Lindley, already considered. It is settled by the

case of Blennerhassett v. Sherman, 105 U. S. 100, that the withholding of deeds from the record under such circumstances avoids them at common law.

With respect to the deed which was made by John W. Corwine in May, 1894, to John M. Barger, and the mortgage given by Barger to Hayes, Jones & Co., a somewhat different result must follow. I have no doubt that the deed by Corwine to Barger was made and withheld from record for the same fraudulent purpose as that which led to the execution of the deeds already discussed; and, were Barger's interest the only one to be here considered, I should have no difficulty in setting that deed aside also; but the intervention of Hayes, Jones & Co., as the mortgagees of Barger, puts a somewhat different phase on the matter. The facts are that, in May, Corwine made a deed to Barger of an undivided one-third of 318 acres of bottom land in Ross county, for the recited consideration of $10,000, without the payment of any money whatever; that Barger owned another undivided one-third in the same land; that Barger withheld the deed from record from May until November; that, on the 9th day of November, the day after the fire which destroyed the plant, Barger went to Hayes, Jones & Co., and, presenting the unrecorded deed from Corwine to himself, obtained from them a loan of $10,000, by a mortgage upon the undivided two-thirds of the land. The money thus obtained was deposited in the bank by Hayes, Jones & Co., and was drawn out by agents of Barger,—$5,000 to pay a note of the huller company, upon which Corwine was indorser, held by Hayes, Jones & Co., and $5,000 to pay a note held by the National Bank at Circleville. I do not find any evidence that Hayes, Jones & Co. were cognizant of the fraud which had been perpetrated by Barger in withholding the deed from record upon the complainant and cross complainants, and, therefore, that, even though the deed of Corwine to Barger is fraudulent as against the complainant and cross complainants, Hayes, Jones & Co. occupy the position of bona fide purchasers for value to the extent of the mortgage-loan. It is argued that they cannot be bona fide purchasers to the extent of the $5,000 note of the huller company and John W. Corwine, held by them, which Barger took up with the proceeds of the mortgage, because this, in effect, made the consideration of the mortgage to the extent of $5,000 nothing but a pre-existing indebtedness, upon which no claim as a bona fide purchaser can be predicated. I think, however, that this argument cannot be sustained. There was a complete novation of the indebtedness. The time for payment was extended, and Hayes, Jones & Co. released all claim against the other indorsers upon the note and against the huller company, and returned the security to Barger. It was decided in Bank v. Taylor, 4 C. C. A. 55, 53 Fed. 854, by the court of appeals of the Seventh circuit (Harlan, circuit justice, Woods, circuit judge, and Jenkins, district judge, constituting the court), that:

"When a creditor surrenders and releases his former obligation and security, extends the time of payment, makes an additional loan, and takes a new mortgage for the entire debt, with the former debtor as surety and a

new party as principal debtor, he becomes a mortgagee for value for the full amount of the entire debt."

The equities of the situation must be worked out in this wise. As the mortgage of Hayes, Jones & Co. covers an undivided one-third originally belonging to Barger, and as the complainant and cross complainants have the right to satisfy their debts out of the undivided one-third received by Barger from Corwine, subject only to the lien of Hayes, Jones & Co., the latter firm, having two securities, can be required to satisfy their debts by first exhausting the undivided one-third belonging to Barger upon which the complainant and cross complainants have no lien whatever, and can only look to the undivided one-third received from Corwine to satisfy the balance of the indebtedness due them.

The decree will find the deeds in question here fraudulent, and will set them aside as such, and will direct the sale of all the land of John W. Corwine conveyed by said deeds to be sold, to satisfy the judgment claims of the complainant and cross complainants, and a return of the proceeds to the court for distribution. The costs will be taxed against the defendants. Counsel may prepare and submit to the court a decree in conformity with this opinion.

### Addendum.

It subsequently having been made to appear to the court that the mortgage deed from Barger to Hayes, Jones & Co. conveyed only the undivided one-third of the 318 acres deeded to Barger by Corwine, and not an undivided two-thirds, as stated by mistake in brief of counsel for defendants, the order for a decree was modified accordingly, and the principle as to the exhausting of one of two securities was not applied.