COMMERCIAL NAT. BANK et al. v. PIRIE et al.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1897.)

No. 791.

1. NATIONAL BANKS—GUARANTY.

The act of congress authorizing the organization of national banks confers upon them no authority, either in express terms or by implication, to guaranty the payment of debts contracted by a third person, and solely for his benefit; and acts of this nature, whether executed by the cashier or the board of directors, are necessarily ultra vires.

2. SALE—FRAUDULENT REPRESENTATIONS—RESCISSION.

The presentation by a merchant seeking to purchase goods of a written guaranty, by a national bank, of payment for any goods he may purchase, even if it implies a representation that the bank is financially sound, is not of itself a fraudulent representation, such as will justify a rescission, since the seller is chargeable with knowledge that in law such a guaranty by a national bank is ultra vires and void.

3. SAME—FRAUDULENT INTENT.

Whether goods are bought with a preconceived fraudulent intent not to pay for them is a question for the jury if there is evidence tending to show such an intent, but not of so conclusive a character as to convince all reasonable minds that such must have been his purpose.

4. VENDOR AND PURCHASER—INNOCENT PURCHASERS.

To vest a mortgagee of chattels with the rights of an innocent purchaser, a pre-existing debt alone is not sufficient, but, if any considerable sum of money is paid at the time of the execution of the mortgage, and as part of its consideration, then the mortgagee may be an innocent purchaser as to the full amount of his loan.

5. CONVERSION—WHEN MAINTAINABLE.

An action for wrongful conversion against one who has sold goods in his possession is not maintainable where defendant had a valid lien upon the property, so that his refusal to surrender it upon demand was not a tort.

In Error to the Circuit Court of the United States for the District of Kansas.

N. T. Guernsey and W. C. Perry (John H. Crain was with them on the brief), for plaintiffs in error.

Charles Blood Smith (W. H. Rossington and Clifford Histed were with him on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a suit to recover the value of certain goods, which was brought by the defendants in error, com-

posing the firm of Carson, Pirie, Scott & Co., against the Commercial National Bank of Independence, Kan., and George T. Guernsey, the plaintiffs in error. The petition on which the case was tried in the circuit court simply alleged that the plaintiffs below, who are the defendants in error here, were the owners of the goods in controversy on June 10, 1892; that the defendants on said day wrongfully converted the same to their own use; and prayed judgment for their value in the sum of $6,920.26. The answer on the part of both of the defendants was a general denial of all the allegations of the petition. The case, as developed by the evidence produced at the trial, was substantially as follows: In February, 1892, and for some time previous thereto, R. T. Webb was president of the Cherryvale National Bank, located and doing business at Cherryvale, Kan. He was also doing a mercantile business at the same place, having first become · engaged in the latter business in September, 1891. On the 17th or 18th day of February, 1892, Webb applied to the firm of Carson, Pirie, Scott & Co., at their place of business in Chicago, Ill., to purchase a bill of goods, and on being asked by a member of the firm to make a property statement as a basis for obtaining credit he produced and exhibited the following document, which had been executed by T. C. Molloy, cashier of the Cherryvale National Bank, at the instance and request of Webb, prior to the latter's departure for Chicago for the purpose of buying goods:

"R. T. Webb, President.    T. C. Molloy, Cashier. ·  A. H. Harding, Vice Prest.
C. F. Godbey, Asst. Cashr.
'Cherryvale National Bank.    Capital, $50,000.00.
"Cherryvale, Kansas, February 15th, 1892.
"Carson, Pirie, Scott & Co., Chicago, Ill.—Gentlemen: We will guaranty the payment of any bill of goods which Mr. R. T. Webb may buy of you while in Chicago, during the present week. If this guaranty is not specific enough, we will make it satisfactory to you.
"Yours, very truly,                The Cherryvale National Bank,
"By T. C. Molloy, Cashier.".

On the production of the aforesaid guaranty, Webb was allowed to purchase a bill of merchandise amounting to $6,395.25.    The goods so purchased were shipped in several lots during the latter days of February, 1892, and the bills therefor, according to the terms of sale, matured on May 15th and June 15th following.    Before the maturity of the bills, Webb made cash payments on account, amounting to $439.60, and returned goods of the value of $39.35. . At the time of this transaction no representations were made by Webb touching his financial condition or solvency, or concerning the solvency or condition of the Cherryvale National Bank; the firm of Carson, Pirie, Scott & Co. being willing, apparently, to extend credit on the afore·said guaranty of the Cherryvale National Bank, which the firm accepted and retained.    In point of fact, Webb was at the time insolvent in the sense that he could not pay his debts as they matured, and the Cherryvale National Bank was also insolvent, and in a failing condition, though still transacting business in the usual manner. On June 10, 1892, a national bank examiner took charge of all the property and effects of the Cherryvale National Bank, and closed its

doors for the transaction of business, by direction of the comptroller of the treasury. On the same day Webb executed two chattel mortgages covering his entire stock in trade,—one in favor of the Commercial National Bank of Independence, Kan., to secure a liability to that bank in the sum of $8,229.68; and the other in favor of George T. Guernsey to secure an indebtedness to said Guernsey in the sum of $5,000. A part of the indebtedness to Guernsey which was thus secured consisted of money, some six or seven hundred dollars, on that day loaned to Webb by said Guernsey. The residue of said indebtedness was a pre-existing debt in the sum of forty-two or forty-three hundred dollars, which Webb then owed to said Guernsey, that was due and unpaid. Under the aforesaid mortgages, Guernsey, who was cashier of the Commercial National Bank of Independence, Kan., immediately took possession of all the mortgaged property, and advertised it for sale on June 27, 1892. Prior to the sale, and on the 27th day of June, 1892, the defendants in error, acting in the firm name of Carson, Pirie, Scott & Co., served a notice on the Commercial National Bank of Independence, Kan., that said firm had been induced to sell the goods in controversy to Webb by reason of certain representations made by Webb and by the Cherryvale National Bank as to Webb's financial responsibility, which representations were false in fact, and were made with a fraudulent intent, and that they had elected to rescind the sale, and reclaim the goods, on account of such fraud. The defendants below, when this notice was served on them, refused to restore the goods in controversy, which were then in their possession, and the same were thereafter sold under the mortgages, whereupon this suit was brought in the form heretofore stated. At the conclusion of the testimony, which established substantially the aforesaid facts, the trial court gave a peremptory instruction, directing the jury to return a verdict in favor of the plaintiffs below. Such a verdict was accordingly returned, and a judgment was rendered thereon against the defendants below in the sum of $6,415.09. An exception, which was duly taken by the defendants to the giving of this instruction, presents all the questions which are to be considered.

We think that the trial court erred in withdrawing the case from the consideration of the jury, and that its action in that respect cannot be upheld. It is not claimed that any oral representations were made to induce the firm of Carson, Pirie, Scott & Co. to sell the goods in question on credit, or to ship them to the purchaser. The representative of the firm who negotiated the sale confessedly acted on the assumption that the written guaranty executed by T. C. Molloy, as cashier of the Cherryvale National Bank, bound the bank, and that the bank was able to meet all its engagements. For this reason he made no inquiries concerning the financial condition of the buyer or the bank, and no representations were made on that subject. The first of these assumptions—that the bank had power, under its charter, to guaranty the payment of the indebtedness contracted by Webb for merchandise—was due to a mistake of law, for which Webb is not legally responsible. The act of congress under which the bank was organized confers no authority upon national

82 F.—51

banks to guaranty the payment of debts contracted by third parties. and acts of that nature, whether performed by the cashier of his own motion or by direction of the board of directors, are necessarily ultra vires. A national bank may indorse or guaranty the payment of commercial paper which it holds, when it rediscounts or disposes of the same in the ordinary course of business. Such power, it seems, a national bank may exercise as incident to the express authority conferred on such banks by the national banking act to discount and negotiate promissory notes, drafts, bills of exchange, and other evidences of debt (People's Bank v. National Bank, 101 U. S. 181, 183; U. S. Nat. Bank v. First Nat. Bank, 49 U. S. App. 67, 24 C. C. A. 597, and 79 Fed. 296); but it has never been supposed that the board of directors of a national bank can bind it by contracts of suretyship or guaranty which are made for the sole benefit and advantage of others. The national banking act confers no such authority in express terms or by fair implication, and the exercise of such power by such corporations would be detrimental to the interests of depositors, stockholders, and the public generally. Norton v. Bank, 61 N. H. 589; State Nat. Bank of St. Joseph v. Newton Nat. Bank, 32 U. S. App. 52, 58, 14 C. C. A. 61, 64, and 66 Fed. 691, 694; Bank v. Smith, 40 U. S. App. 690, 23 C. C. A. 80, and 77 Fed. 129. In contemplation of law, therefore, the vendors knew, when they sold the goods in controversy, that the guaranty in question was of no avail as a security, even though they supposed that it had been executed with the sanction of the board of directors. It results from this view that, if we were able to admit that the presentation of the guaranty to Carson, Pirie, Scott & Co. carried with it an implied representation that it had been executed by direction of the board of directors, and that the bank was in a sound financial condition, yet we would not be able to concede that either of these representations was material, inasmuch as the plaintiffs below must be presumed to have known that the guaranty imposed no legal obligation upon the guarantor.

It is suggested in behalf of the defendants in error that, although the evidence produced at the trial failed to disclose that any false representations, such as were alleged in the notice of rescission that was served on the Commercial National Bank, had been made to induce the sale, yet, as there was evidence which tended to show that Webb bought the goods with the preconceived intent not to pay for them, the court was authorized to direct a verdict for the plaintiffs below on that ground. With reference to this contention it is only necessary to say that, if there was evidence which would have justified a finding that Webb made the purchase with the intent last stated, and that the sale was voidable, and subject to rescission on that ground, then the issue as to such intent was one of fact, which should have been submitted to the jury. It is obvious, we think, that the testimony which tended to show that Webb had no intention of paying for the goods when he purchased them was not so conclusive as to convince all reasonable minds that such must have been his purpose. As before stated, he did make a payment on account amounting to $439.60, and, if the issue in question had been fairly

submitted to the jurors, and they had found that Webb bought the goods with the expectation of paying for them, but was disappointed in his expectations, we think that finding should not have been disturbed.

Another question is presented by this record which deserves notice, in view of its possible recurrence on a second trial of the case. That question is whether, on the state of facts which is disclosed by the record, the trial court should have permitted the jury to determine, under proper instructions, whether the defendants below were innocent purchasers for value of the property in controversy. This defense appears to have been rejected by the trial judge on the theory that the defendants below could, in no event, be regarded as purchasers for value, because the bulk of the mortgage indebtedness which was secured by the two mortgages in favor of the Commercial National Bank of Independence, Kan., and George T. Guernsey, was a pre-existing debt due from Webb, the mortgagor, to the respective mortgagees. For this reason, apparently, the trial court relegated the defendants to the position occupied by Webb, who was alleged to be a fraudulent purchaser of the mortgaged property. It is insisted in behalf of the defendants that such action was erroneous; that, inasmuch as the evidence showed without contradiction that the sum of six or seven hundred dollars was paid to Webb by Guernsey when the mortgages were executed, they were for that reason entitled to be treated as purchasers for value, and to have the jury determine whether they accepted the mortgages in good faith, without knowledge of the fraudulent conduct of the mortgagor, and without notice of the alleged defect in his title. We are not prepared to say that the bank was a purchaser for value, because there was no evidence tending to show that the bank paid any money, surrendered any security, or incurred any new obligation in consideration for the mortgage which was executed by Webb in its favor. That mortgage seems to have been given solely for the purpose of securing a pre-existing debt, and it is well settled that a mortgage executed for such purpose, without any new or additional consideration moving from the mortgagee, does not vest the latter with the rights of a purchaser for value. He simply acquires such a title to the mortgaged property as is vested at the time in the mortgagor. It is manifest, however, that the jury might have found that Guernsey was a purchaser for value under the mortgage executed in his favor, since there was testimony to the effect that he advanced and paid to the mortgagor about $700 contemporaneously with the execution of the mortgage, which loan formed a part of the consideration for that instrument. In other words, the proof showed that the mortgage to Guernsey was not given solely as security for a pre-existing debt. The payment of the sum of money last mentioned made the mortgagee a purchaser for value, and on the assumption that the jury would have found, if the question had been submitted to them, that Guernsey acted in good faith, without notice of the alleged defect in the mortgagor's title, we perceive no reason why the mortgage so executed should not be regarded as a valid security in Guernsey's hands for the entire amount of the indebtedness thereby secured. It is not a question of the

amount advanced or paid to obtain security for the debt specified in the mortgage which determines the validity of the security as against the defrauded vendors, but the fact that the mortgagee did advance and pay a considerable sum of money for that purpose, doing so in good faith, and without notice of prior equities. Glidden v. Hunt, 24 Pick. 221; Bank v. Taylor, 9 U. S. App. 406, 444, 4 C. C. A. 55, and 53 Fed. 854; Henderson v. Gibbs, 39 Kan. 679, 685, 18 Pac. 926; Schumpert v. Dillard, 55 Miss. 348, 361; Thames & Co. v. Rembert's Adm'r, 63 Ala. 561, 572; Cary v. White, 52 N. Y. 138, 142; Fargason v. Edrington, 49 Ark. 207, 214, 4 S. W. 763; Port v. Embree, 54 Iowa, 14, 6 N. W. 83; Institution v. Young, 55 Iowa, 132, 7 N. W. 480. But, even if we should concede that, as against the defrauded vendors (the firm of Carson, Pirie, Scott & Co.), Guernsey was only entitled to a lien on the mortgaged property for the sum loaned to Webb when the mortgage was executed, yet it would nevertheless be true that the plaintiffs below would not be entitled to recover in this action if such loan was made in good faith, without knowledge of the alleged fraudulent purchase. This action, as before shown, is a suit at law, and proceeds upon the theory that the defendants below were guilty of a tort in refusing to surrender the mortgaged property when the possession thereof was demanded. It is obvious, therefore, that, if Guernsey had a valid lien on the property to the extent of $700, he was entitled to retain the possession of the same until that lien was paid, or until payment thereof was tendered; and no liability was incurred by the defendants in refusing to comply with the plaintiff's demand. The judgment of the circuit court is accordingly reversed, and the case is remanded for a new trial.