# FIRST NATIONAL BANK OF MOSCOW, Appellant, v. AMERICAN NATIONAL BANK OF KANSAS CITY.

### Division One, March 18, 1903.

1. **Appellate Jurisdiction:** NATIONAL BANKS. The Supreme Court has jurisdiction over the appeal in a case involving the power of a national bank to bind itself to a third person to pay a draft on one of its customers, since this involves a Federal question.

2. **National Bank Act:** AUTHORITY OF FEDERAL DECISIONS. The powers of a national bank under the National Bank Act are essentially matters for Federal construction and interpretation, and the State courts in construing their powers will be guided by the decisions of the Supreme Court of the United States.

3. ———: ULTRA VIRES: RIGHT TO PLEAD. A national bank has the right to plead *ultra vires* as to any contract it may have made when sued thereon by the other party thereto, whether such contract be executed or not. A contract of a national bank which is *ultra vires*, that is to say, outside the object of its creation as defined in the law of its organization, is not only voidable, but wholly void, and can not be ratified by either party.

4. ———: ———: GUARANTEEING DRAFTS. A national bank has no power, either with or without consideration, to agree to bind itself that a draft drawn by a customer of another national bank on one of its own customers will be paid. Such an agreement is a mere guarantee, and is not within the powers conferred on national banks, and when sued upon such contract the bank can successfully interpose a defense of *ultra vires*.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Wollman, Solomon & Cooper* for appellant.

(1) The defense of *ultra vires* can not be successfully interposed by defendant in this case for the reasons: first, the National Banking Act does not prohibit a national bank from entering into contract such as is contained in the two telegrams of May 18th and 19th, and the contract has been fully performed by the plaintiff; second, Clemons & Company are the real parties

in interest, having indemnified the defendant and assumed full charge and control of the defense, and having deposited sufficient money with defendant to take care of the drafts. Hutchins v. Bank, 128 N. C. 72; People's Bank v. Nat. Bank, 101 U. S. 183; Railroad v. McCarthy, 96 U. S. 267; Railroad v. Transp. Co., 83 Pa. 160; Bushnell v. Bank, 10 Hun 378; Arms Co. v. Barlow, 63 N. Y. 62; Wat. Corp., 604; West. Nat. Bank v. Armstrong, 152 U. S. 470. The contract sued on is not *ultra vires* the corporation. Authority is given by the National Banking Act to national banks to transact such banking business as is specified in the act, and all incidental powers necessary to carry on the business. These powers are such as are required to meet all the legitimate demands of authorized business and to enable the bank to conduct its affairs within the scope of its charter safely and prudently. There is no specified authority given in the act of Congress for a bank to certify checks. Yet it was said by Judge SWAYNE, in the case of Bank v. Bank, 10 Wall. 604: "The practice of certifying checks has grown out of the business needs of the country. . . . It is computed by competent authority that the average daily amount of such checks in use in the city of New York throughout the year is not less than $100,000,000. We could hardly inflict a severer blow upon the commerce and business of the country than by throwing a doubt upon their validity." (2) It is well-established principle that where contracts made by or with corporations are not expressly prohibited by statute, and have been fully, or even partially, executed so that it would be unjust to allow a repudiation thereof by either party, the defense of *ultra vires* will not be sustained by the courts. The defense should not prevail when it would not advance justice, but, on the contrary, work a legal wrong. Ins. Co. v. Smith, 117 Mo. 289; Bank v. Matthews, 98 U. S. 621; Bank v. Pierson, 24 Minn. 141; Martindale v. Railroad, 60 Mo. 508; Bradley v. Ballard,

55 Ill. 417; 27 Am. and Eng. Ency. of Law (1 Ed.), p. 378; Root v. Godard, 3 McLean (U. S.) 102; Kinealy v. Railroad, 69 Mo. 663; Hovelman v. Railroad, 79 Mo. 663.   (3)   Clemons & Company are the real parties in interest.   The admission made by defendant at the trial and the testimony of the defendant's cashier showed that Clemons & Company assumed absolute charge of the case, and obligated themselves by contract to pay the judgment and all costs and expenses and employ attorneys to take charge of and conduct the defense.   Under this state of facts, Clemons & Company would be estopped to deny the binding force against them of the judgment in this case in an action over by the bank against them.   Littleton v. Richardson, 34 N. H. 187; Boston v. Worthington, 10 Gray 486; Landis v. Hamilton, 77 Mo. 565; Lovejoy v. Murray, 70 U. S. 129.   (4)   It has come to be regarded as a settled rule in this State that the State itself is the only one who can question the validity of an *ultra vires* act of a corporation.   Sav. Ins. v. Board of Education, 75 Mo. 412; Ins. Co. v. Smith, 117 Mo. 261.   The same rule has been adopted by the Supreme Court of the United States with reference to national banks.   Thompson v. Bank, 146 U. S. 958.

*Hamner & Hamner* for respondent.

(1)   This court will follow the United States Supreme Court's construction of the National Banking Act.   Haseltine v. Bank, 155 Mo. 66.   (2)   Respondent had the right to set up the defense of *ultra vires*. Bank v. Kennedy, 167 U. S. 165; McCormick v. Bank, 165 U. S. 538; Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 48; Pearce v. Railroad, 62 U. S. (21 How.) 441; Railroad v. Railroad, 163 U. S. 564; Thomas v. Railroad, 101 U. S. 71; Railroad v. Railroad, 118 U. S. 290; Oregon R. & Nav. Co. v. Railroad, 130 U. S. 22; Bacon, Dawson & Co. v. Bank, 79 Mo.

App. 406.   (3)   The alleged guaranties, even if guaranties, are *ultra vires* and void.   Bacon, Dawson & Co. v. Bank, supra; Bowen v. Bank, 87 Fed. 430; 94 Fed. 925; Flannagan & Bennett v. Bank, 56 Fed. 959; Seligman v. Bank, 3 Hughes 647; Johnston v. Bank, 13 Fed. Cases 885; Bank v. Atkinson, 55 Fed. 465; 61 Fed. 809; 27 U. S. App. 88; 10 C. C. A. 87; Bank v. Pirie, 82 Fed. 799; 49 U. S. App. 596; Bank v. Kennedy, 167 U. S. 368; Pearce v. Railroad, supra; Groos v. Brewster, 55 S. W. 590; Thilmany v. Paper Bag Co., 108 Iowa 333; 1 Morse on Banks and Banking, pp. 144, 145, sec. 65.   (4)   The telegrams were, as a matter of law, and should be construed as, mere expressions of opinion, and respondent received no pay or security from any one to send them, and they were such.   Case v. Luse, 28 Iowa 527; 1 Brandt on Surety & Guaranty (2 Ed.), pp. 154, 155, secs. 103 and 104; Nichols v. Bank, 55 Mo. App. 81.

MARSHALL, J.—This is an action to recover upon three drafts drawn by Lieuallen, of Idaho, upon Clemons & Company, of Kansas City, for certain merchandise bought by the latter from the former, and which drafts were discounted by the plaintiff on the faith of a telegram to it by the defendant that they would be paid.   The plaintiff recovered a judgment in the trial court.   The court granted a new trial assigning as a reason, "that the court erred in refusing defendant's instructions as demurrer to the evidence and in refusing defendant's instruction requesting the court to find for the defendant."   The plaintiff appealed to the Kansas City Court of Appeals, and that court transferred the case to this court on the ground that a Federal question is involved.

The facts are these:   Both of the parties hereto are national banks.   In May, 1898, Clemons & Company entered into negotiations with Lieuallen to ship them certain potatoes, agreeing to advance fifty cents

per hundred pounds thereon. Lieuallen applied to the plaintiff bank to cash his drafts on Clemons & Company, therefor, and that bank refused to do so unless Clemons & Company's bank would telegraph it to pay the drafts. Accordingly the defendant bank telegraphed the plaintiff bank on May 18th and 19th, 1898, as follows:

"Kansas City, Mo., May 18, 1898.
"First National Bank, Moscow, Idaho:

"Drafts of C. C. Lieuallen drawn on C. C. Clemons & Company with bills lading attached for three cars choice sacked potatoes, valuation fifty cents per hundred pounds, will be paid.
"J. R. DOMINICK, Cashier."

"Kansas City, Mo., May 19, 1898.
"First National Bank, Moscow, Idaho:

"Drafts C. C. Lieuallen on C. C. Clemons & Company, with bills lading attached for three more cars choice sacked potatoes, valuation fifty cents per hundred pounds, will be paid.
"J. R. DOMINICK, Cashier."

Upon receipt of these telegrams the plaintiff bank cashed three certain drafts drawn by Lieuallen on Clemons & Company, with bills of lading, for the potatoes shipped, attached. The drafts were payable to the plaintiff bank. The drafts were dishonored by Clemons & Company, and payment was likewise refused by the defendant bank. Clemons & Company received all the potatoes and sold them and never paid for them. Thereupon this suit was brought. The defendant set up three defenses: first, want of power in the cashier of the bank to send the telegrams and that they were not sent in course of the business it was authorized to do, and were not intended by the cashier to bind the defendant as surety or guarantor, nor to induce the plaintiff to cash the drafts; second, that the potatoes did not come up to the quality agreed to be purchased; third, that as a national bank the defend-

ant had no power to bind itself to pay the drafts. The reply pleads estoppel on the part of the defendant to plead *ultra vires*.

The trial took a wide range, as to the character of the potatoes, the custom of banks in like cases, and the meaning of the telegrams themselves, as to whether they would be taken in banking circles to be a promise by the bank to pay the drafts or that Clemons would pay them, or simply as an expression of opinion as to Clemons & Company's standing and financial responsibility.

It was admitted that Clemons & Company were customers of the defendant bank and had on general deposit with the defendant at the time more than enough money to pay the drafts, though it had not been specially set apart for that purpose; and that Clemons & Company afterwards gave the defendant a bond of indemnity against loss, and employed counsel and are defending this case at their own expense.

## I.

The case necessarily involves the power of a national bank to bind itself to a third person to pay a draft on one of its customers. The answer pleads want of power in the defendant under the national banking act. A Federal question is therefore directly raised by the record, and, therefore, this court has jurisdiction, and the Kansas City Court of Appeals properly transferred the case to this court. [California Bank v. Kennedy, 167 U. S. 1. c. 365; Bank v. Haseltine, 155 Mo. 62; affirmed, 183 U. S. 132.]

## II.

The powers of a national bank under the National Banking Act are essentially matters for Federal construction and interpretation, and whatever rules may obtain in the several States as to the powers of corporations under State statutes, all State courts must

yield to the decisions of the Supreme Court of the United States construing the powers of national banks under the National Banking Act.

In this case the defendant pleads that it had no power under the National Banking Act to enter into a contract with the plaintiff bank—which is likewise a national bank—that the draft of Lieuallen on Clemons & Company would be paid, because such a contract was a mere guarantee, and that it was *ultra vires* of its power to make such a contract. The plaintiff replies that the defendant is estopped to plead *ultra vires,* among other reasons, because the contract is an executed contract on the part of the plaintiff, and because only the Government can question the power of the defendant to enter into such a contract.

This, therefore, raises the question of the power of national banks to interpose a plea of *ultra vires* as to any contract it may make, when sued on the contract by the other party thereto.

Speaking to this proposition, the Supreme Court of the United States, through Mr. Justice WHITE, in California Bank v. Kennedy, 167 U. S. 1. c. 367, said:

"Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the State courts, in this court it is settled in favor of the right of the corporation to plead its want of power, that is to say, to assert the nullity of an act which is an *ultra vires* act. The cases of Thomas v. Railroad Company, 101 U. S. 71; Pennsylvania Railroad v. St. Louis, Alton, etc., Railroad, 118 U. S. 290; Oregon Railway and Navigation Co. v. Oregonian Railway Co., 130 U. S. 1; Pittsburgh, Cincinnati, etc., Railway v. Keokuk & Hamilton Bridge Co., 131 U. S. 371; Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24; St. Louis, etc., Railroad v. Terre Haute & Indianapolis Railroad, 145 U. S. 393; Union Pacific Railway v. Chicago, etc., Railway, 163 U. S. 564, and McCormick v. Market Nat. Bank, 165 U. S. 538, recog-

nize as sound doctrine that the powers of corporations
are such only as are conferred upon them by statute,
and that, to quote from the opinion of the court in
Central Transp. Co. v. Pullman's Palace Car Co., 139
U. S. 24, 59 to 60, 'A contract of a corporation, which
is *ultra vires*, in the proper sense, that is to say, out-
side the object of its creation as defined in the law of
its organization, and therefore beyond the powers
conferred upon it by the Legislature, is not voidable
only, but wholly void, and of no legal effect.   The ob-
jection to the contract is, not merely that the corpora-
tion ought not to have made it, but that it could not
make it.   The contract can not be ratified by either
party, because it could not have been authorized by
either.   No performance on either side can give the
unlawful contract any validity, or be the foundation
of any right of action upon it.'

"This language was also cited and expressly ap-
proved in Railroad v. Hooper, 160 U. S. 514, 524, 530.

"As said in McCormick v. Market National Bank,
165 U. S. 538, 549:  'The doctrine of *ultra vires*, by
which a contract made by a corporation beyond the
scope of its corporate powers is unlawful and void and
will not support an action, rests, as this court has of-
ten recognized and affirmed, upon three distinct
grounds:   The obligation of any one contracting with
a corporation to take notice of the legal limits of its
powers; the interest of the stockholders not to be sub-
ject to risks which they have never undertaken; and,
above all, the interest of the public that the corporation
shall not transcend the powers conferred upon it by
law.   [Pearce v. Railroad, 21 How. 441; Railroad v.
Keokuk & Hamilton Bridge Co., 131 U. S. 371, 384;
Central Transp. Co. v. Pullman's Palace Car Co., 139
U. S. 24, 48.'

"The doctrine thus enunciated is likewise that
which obtains in England.   [Ashbury Railway Car-
riage & Iron Co. v. Riche, L. R. 7 H. L. 653; Attorney-

General v. Great Eastern Railway Company, 5 App. Cas. 473; Baroness Wenlock v. The River Dee Company, 10 App. Cas. 354; Trevor v. Whitworth, 12 App. Cas. 409; Ooergum Gold Mining Co. of India v. Roper (1892), App. Cas. 125; Mann v. Edinburgh Northern Tramways (1893), App. Cas. 69.]"

This closes the matter, so far as this court is concerned, and it must be accepted as the law in this case, that the defendant has a right to plead *ultra vires* as to the contract here sought to be enforced against it.

## III.

This leaves for consideration the question of whether the contract sued on constituted a guarantee by the defendant to the plaintiff that the draft of Lieuallen on Clemons & Company, would be paid.

Section 5136, United States Compiled Statutes 1901, volume 3, prescribes the powers of national banks, and the seventh enumeration of powers therein contained is as follows: "To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title."

This law has undergone thorough and exhaustive adjudication in the courts of the United States, and, briefly stated, the rule declared is that a national bank has no power, either with or without a sufficient consideration, to agree or bind itself that a draft of A. upon B. will be paid; that such agreement is a mere guarantee and is not within the powers conferred upon

such banks, and that when sued upon such a contract the bank can successfully interpose a defense of *ultra vires*. [Seligman v. Charlottesville National Bank, 3 Hughes 647, 21 Fed. Cases 1036; Johnston v. Charlottesville National Bank, 3 Hughes 1657, 13 Fed. Cases 885; National Bank of Commerce of Kansas City v. First National Bank of Kansas City, Kansas, 61 Fed. 809, 10 C. C. A. 87; Commercial National Bank v. Pirie, 82 Fed. 799, 49 U. S. App. 596; Western National Bank v. Armstrong, 152 U. S. 351; Bowen v. Needles Natl. Bank, 87 Fed. 430, and cases cited; First Natl. Bank v. Natl. Exchange Bank, 92 U. S. 127.] This rule of the Federal courts has been yielded to and enforced in State courts. [Thilmany v. Paper Bag Co., 108 Iowa 333, and cases cited; Groos v. Brewster, 55 S. W. (Tex.) 590.]

The rule is thus tersely stated in Bank v. Pirie, 82 Fed. 799: "The act of Congress under which the bank was organized confers no authority upon national banks to guaranty the payment of debts contracted by third parties, and acts of that nature, whether performed by the cashier of his own motion or by direction of the board of directors, are necessarily *ultra vires*. A national bank may indorse or guaranty the payment of commercial paper which it holds, when it rediscounts or disposes of the same in the ordinary course of business. Such power, it seems, a national bank may exercise as incident to the express authority conferred on such banks by the National Banking Act to discount and negotiate promissory notes, drafts, bills of exchange, and other evidences of debt (People's Bank v. National Bank, 101 U. S. 181, 183; U. S. Nat. Bank v. First Nat. Bank, 49 U. S. App. 67, 24 C. C. A. 597, and 79 Fed. 296); but it has never been supposed that the board of directors of a national bank can bind it by contracts of suretyship or guaranty which are made for the sole benefit and advantage of others. The National Banking Act

confers no such authority in express terms or by fair implication, and the exercise of such power by such corporations would be detrimental to the interests of depositors, stockholders, and the public generally. [Norton v. Bank, 61 N. H. 589; State Nat. Bank v. Newton Nat. Bank, 32 U. S. App. 52, 58, 14 C. C. A. 64, and 66 Fed. 691, 694; Bank v. Smith, 40 U. S. App. 690, 23 C. C. A. 80, and 77 Fed. 129.] In contemplation of law, therefore, the vendors knew, when they sold the goods in controversy, that the guaranty in question was of no avail as a security, even though they supposed that it had been executed with the sanction of the board of directors. It results from this view that, if we were able to admit that the presentation of the guaranty to Carson, Pirie, Scott & Company carried with it an implied representation that it had been executed by direction of the board of directors, and that the bank was in a sound financial condition, yet we would not be able to concede that either of these representations was material, inasmuch as the plaintiffs below must be presumed to have known that the guaranty imposed no legal obligation upon the guarantor.''

It will be readily understood, however, that this rule does not prohibit national banks from issuing certified checks. [Merchants' Bank v. State Bank, 10 Wall. 604.] But this is very different from entering into a contract of guaranty.

It will be of no profit in this case to consider the rules of law adopted by the several States bearing upon the power of banks organized by authority other than the Federal government, to enter into such contracts, or to interpose the defense of *ultra vires* after the other party to the contract has fully performed it, for the decisions of the Federal courts treat all such contracts as void and unenforcible as to national banks, and this court is in duty bound to defer to those Federal decisions.

For these reasons the judgment of the circuit court granting a new trial for the reason that the contract is void and that the plaintiff is not entitled to recover in this action, is affirmed.

All concur.