Robinson, J.
While some eighteen assignments of error are made in the petition of the plaintiffs in error, the determination of the following legal propositions will decide this case.
1. Did the ordinance of. the village of Fort Loramie, granting a franchise to The Minster & Loramie Railway Company to construct and operate a street railway in said village, and its acceptance by the company, constitute a contract obligating the company to operate the road for the life of the franchise?
2. If so, did The First National Bank of New Bremen, by the purchase of said road at judicial sale, assume the obligation to so operate the road ?
3. Had the bank power to assume the obligation ? _ . '
4. Can the bank plead its own assumption of a power beyond that granted to it by its charter, for the purpose of avoiding performance of its contract ?
5. Has a chancery court jurisdiction to relieve a public utility from its obligation other than contractual to operate such utility?
*38 The Minster & Loramie Railway Company having first obtained a franchise from the village of Fort Lorami.e, which franchise was for a period of twenty-five years and among others contained a provision that “The owner, or owners, of said electric street railway shall maintain thereon improved passenger cars with all modern conveniences for the comfort of passengers, and such cars shall be run at least as often as The Western Ohio Railway Company, or its. successors, lessees or assigns, shall run its regular passenger cars into the village of Minster, Auglaize county, Ohio, and said cars shall be run at such times as to make direct and immediate connections with all regular passenger cars leaving said village of Minster over what is now known as the Western Ohio -Railway,” constructed in 1910 a street railway in the village of Fort Loramie and an interurban railway from the village of Fort Loramie to Minster, at a cost of $42,700, for all of which it issued bonds. From the date of completion to 1914 it operated the street and interurban railways, under a contract with The Western Ohio Railway Company, as one road, when it became so financially involved that it was judicially declared insolvent and placed in the hands of a receiver.
For the purpose of giving it another trial and saving the sendee to the public, the bondholders consented to a cancellation of the bonds. A new bond issue was made in the sum of $20,000, and sold to The First National Bank of New Bremen for $17,000, out of which a general indebtedness of some $6,000 was paid, the receivership lifted, *39 and the road continued in operation until 1916, when it, having defaulted in three installments of interest, having accumulated an additional indebtedness of some $1,600,.and having made no improvements or repairs since its original construction, was again declared insolvent and a receiver appointed at the instance and suit of The First National Bank of New Bremen.
Such proceedings were had in such suit that the receiver was ordered to sell the railroad and all the property thereof, including the franchise, as a going concern. At the sale thereof, C. P. Gress, acting for and as agent of The First National Bank of New Bremen, bid the sum of $23,000, and the sale was made to him for the bank for that sum.
Thereafter, the bank undertook to sell the road as a going concern, and pending negotiations continued for a period of forty days to operate the road, when, failing to make a sale as a going concern, it was about to discontinue Operation and dismantle the road.
That the bank understood and believed that it had bought all the rights of The Minster & Loramie Railway Company under the franchise is apparent from its own acts in operating the road thereunder, and in attempting to sell it, including the franchise, as a going concern; and the court is disposed to adopt the bank’s own interpretation of the scope of the purchase — especially in view of the fact that the sale was made at the instance of the bank and no issue made in that case as to the necessity for discontinuance of operation and dismantling of the road — and to hold that if the *40 purchaser had the power .to assume the obligations of the franchise contract that it so did, and that the ordinance granting the franchise, and its acceptance by The Minster & Loramie Railway Company, amounted to a contract to operate for twenty-five years.
The power of a national bank to contract to operate a railroad, street or otherwise, if it exists, must be found in subdivision 7 of Section 5136, U. S. R. S. (13 Stats. at Large, 101; Section 9661, U. S. Comp. Stats.), which reads:
“To exercise by its board of directors, or duly authorized officers or- agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes' according to the provisions of this Title.”
The limitation of the power of a national bank to that expressly granted by the statute has been so definitely held by the federal courts that it would seem that there is nothing that could be added by this court.
In Logan County National Bank v. Townsend, 139 U. S., 67, it was held: “The national banking act is an enabling act for associations organized under it, and one cannot rightfully exercise any powers except those expressly granted, or such incidental powers as are necessary to carry on the business for which it was established.” Followed *41 in California Bank v. Kennedy, 167 U. S., 362, 366.
It would not be contended that the bank could have accepted the franchise in the first instance from the village, nor have obligated itself to operate a street railroad" or any other kind of a railroad. Upon the suit of any stockholder, a court would have promptly enjoined, and upon the initiative of the United States government its charter would have been revoked. Nor will it be permitted by indirection to do that which it cannot do directly.
In First National Bank of Ottawa v. Converse, 200 U. S., 425, it was held: “A national bank has no power to engage in or promote a purely speculative business or to take stock in a corporation organized for that purpose, nor can the power to take such stock as a means of protecting itself from loss on preexisting -indebtedness be inferred from the right to accept it as security for a present loan.” Followed in Merchants’ Natl. Bank v. Wehrmann, 202 U. S., 295, 301.
In Cooper v. Hill, 94 Fed. Rep., 582, it was held: “A national bank which. has lawfully acquired the title to property in payment of a debt has implied authority to make reasonable repairs thereon for the purpose of putting it in salable condition, and its directors cannot be held personally liable for money so expended in good faith.
“A national bank, however,. has no power to prosecute a mining business' on property which it ’has acquired, — much less, to expend its funds in prospecting for mineral on such property; and *42 directors who authorize such expenditure are personally liable therefor to the bank or its receiver.”
In Cockrill v. Abeles, 86 Fed. Rep., 505, it was held in the syllabus:
“Where a national bank acquired certain mill property, in satisfaction of a debt, and the directors organized a corporation among themselves for the purpose of operating the mills as the-bank’s agent, using its funds, and operated them for the bank at a loss of .$23,000, the directors of the bank participating are liable to the creditors for the loss.”
In the opinion, at page 512, it is stated that “The most liberal view which may be fairly taken of the implied powers of national banks would not sustain their right, to engage directly in a manufacturing or business enterprise under an)r circumstances; but, even if the power in question should be conceded to exist under certain conditions, the present case was not one which warranted its exercise. The directors of the bank had no right to employ its funds in an attempt to operate the cotton mills for the bank’s account, in the manner alleged in the bill, and such action' on their part was unauthorized and wrongful.”
Is the defense of ultra vires available to plaintiff in error The First National Bank of New Bremen ?
This proposition, too, has been the subject of repeated decisions.of the federal and other courts.
In First Natl. Bank of Moscow, Idaho, v. American Natl. Bank of Kansas City, (173 Mo., 153), 72 S. W. Rep., 1059, it was held: “When a national bank enters into a contract which is beyond its powers, it cannot be estopped from pleading ultra *43 vires by the performance of the contract by the other party.”
In Merchants’ Natl. Bank v. Wehrmann, 202 U. S., 295, it was held:
“While a national bank may take by way of security property in which it is not authorized to invest, and may become the owner thereof by foreclosure in satisfaction of the debt; but, without deciding whether it could take shares in a partnership formed for purely speculative purposes as security, it cannot, even in satisfaction of a debt so secured, become. the absolute owner of such shares. It would be ultra vires and as it cannot take the shares it is not, -and cannot be held, liable for any of the debts of the firm.
“A national bank which has taken such shares in satisfaction of a debt is not estopped either from denying that it was a partner or that it is liable for the debts of the firm.” ,
In First Natl. Bank of Ottawa v. Converse, 200 U. S., 425, it was held: “Notwithstanding its subscription, a national bank taking stock in a corporation organized for purelyspeculative purposes, may plead its want of authority so to do as a defense to the claim of a receiver of such corporation for the double liability imposed by a state statute on the .stockholders thereof.”
In California Bank v. Kennedy, 167 U. S., 362, 363, it was held: “The want of such authority may be set up by a bank to defeat an attempt to enforce against it the liability of a stockholder.” .
In Concord First National Bank v. Hawkins, 43 Law. Ed., 1007 (174 U. S, 364), it was held: “In *44 the case of such an actual purchase by a national bank, it is not estopped to deny its liability, as an apparent stockholder, for an assessment of such stock ordered by the Comptroller of the Currency.”
The principle that a national bank has not the power to engage in business, other than banking business, to an extent beyond that necessary to save itself from loss, and the principle that it may plead such lack of power in its own defense, seem to be stare decisis in the federal courts, and it would be a vain thing for a state court to attempt to overrule them. We are not holding, however, that the court would not be authorized to refuse to confirm a sale that had been made to an organization which could not, because of such lack of power, assume the obligations incident to the purchase, nor that a reviewing court would not be justified in setting such sale aside. This proceeding being wholly independent of the proceeding in which the sale was made, and with different parties plaintiff and defendant, that question is not here for determination.
Had the court, at the time this* action was instituted, jurisdiction to authorize the discontinuance of service by the then owners of the road?
Having held that the bank was without power to enter into a contract to operate a railroad as a public utility, and that the defense of ultra vires is available to it, we have the situation of a national bank owning, as a going concern, a street and interurban railroad which had been devoted to the public service, to which the public by reason of such devotion and operation had adjusted its busi *45 ness and .social relations, thereby acquiring a right to have the service continued if such service could reasonably be continued without such loss as would amount to confiscation, but the owner of the road being without power to obligate itself to operate it, and therefore without.any contractual obligation to operate it; and, in addition, the power of a court of equity invoked to compel the owner to continue to render such service. Surely the bank had the right in such case to appeal to the same court to relieve it from such implied obligation and to judicially determine its rights as to the future use and'disposition of the property.
The court having taken jurisdiction for the purpose of compelling the performance of an obligation will retain jurisdiction for the purpose of hearing the defense thereto, even though to establish such defense it will be necessary to grant affirmative relief, and especially where for such affirmative relief there is no adequate remedy at law.
• That the road at all tithes has been unable to earn a fair return on the capital invested must.be conceded by everyone. That it has not been self-supporting seems apparent from its history as'disclosed by the record. We are therefore of opinion that, independent of the lack of power in The First National Bank of New Bremen to operate the road, its financial history is such that the court ought to authorize the discontinuance of its operation and the dismantling of the road. ■
We, however, are not disppsed to deprive the village of Fort Loramie and the public of that vicinity of the opportunity to preserve the public *46 service character of the road, nor to allow the bank to take advantage of its own lack of power to fulfill its void contract, and make a profit from the transaction to the detriment of the village and of the public, without first giving all parties ip. interest an opportunity to purchase the’road and assume an obligation to continue its public service operation under the franchise, or such new franchise as the village may have the power and be willing to grant.
The judgment of the court of appeals and of the court of common pleas will therefore be reversed and the plaintiff in error The First National Bank of New Bremen be authorized to discontinue the operation of said road at once. And, in the event that no tender be made said bank of the amount paid by it for said road, with interest, plus the deficits which the bank has obligated itself to pay, if any, within thirty days, by an organization authorized and willing to obligate itself to operate said road under said franchise, or such franchise as the village is willing and empowered to grant, that The First National Bank of New Bremen be authorized to dismantle and sell all the assets of sáid road.

Judgment reversed.

Jones, Matthias, Johnson ana Donahue, JJ, concur.
Wanamaker, J., not participating.