## C. E. Healey & Son, Appellee, v. The Stewardson National Bank, Appellant.

### Gen. No. 8,965.

Opinion filed April 17, 1936.

JOHN J. BAKER, of Shelbyville, for appellant.

JOHN N. ZIMMERMAN, of Effingham, and U. G. WARD and PHILIP L. TURNER, both of Shelbyville, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

This is an action at law brought by appellee against appellant bank to recover on an alleged guaranty by the appellant for the payment of a portion of a check given by one Floyd Whitacre to the appellee. By agreement of parties jury was waived and cause tried by the circuit court of Shelby county.

The complaint, as amended, charges in substance, that the appellant, the Stewardson National Bank, was duly incorporated under the laws of the United States and engaged in the banking business in the Village of Stewardson, Illinois; that on November 30, 1933, Floyd Whitacre made his personal check for the sum of $1,274.21, payable to the order of appellee, which check was drawn on the appellant bank; that thereupon, on November 29, 1933, in consideration that appellee, at the request of the appellant, would accept the said check, the appellant, by telegram, at the request of the DuQuoin State Bank, of DuQuoin, Illinois, guaranteed the payment of the said check up to the amount of $700 and promised to pay appellee the same, if the said Floyd Whitacre should not pay the said check; that the appellee relied upon the undertaking of the appellant and accepted the check from the said Floyd Whitacre; that the said Floyd Whitacre has not paid said check or any part of the same; that appellee after-

wards presented the said check to the appellant bank for payment but payment was refused.

Attached to the complaint under the caption of "copy of instruments sued on" appears the following:

Floyd Whitacre
Cream, Poultry and Eggs
N. P. No. 14621
70–371
Stewardson, Ill., Nov. 30, 1933.

Pay to the
Order of      C. E. Healey & Son      $1247.21
    Twelve Hundred Seventy-four 21/100      Dollars
                Floyd Whitacre
                By: Ben Brown.
To the Stewardson National Bank
70–968   Stewardson, Ill.
                Western Union
                November 29, 1933

To DuQuoin State Bank
Street and No. ..........
Place DuQuoin, Illinois.
    We guarantee Floyd Whitacre check up to Seven
    Hundred Dollars to Healey at their request.
                Stewardson National Bank
                Stewardson, Illinois.

The answer of the appellant was in substance a general denial of all the material facts alleged in the complaint and while other matters are set up in the answer, the main ground of defense urged by appellant was that the act or contract of guaranty set forth in the complaint was ultra vires and beyond the charter powers of a national bank such as the appellant corporation.

There was no serious controversy over the facts and from the stipulation and testimony it appears that the

appellee is a partnership consisting of C. E. Healey and Flora B. Healey and that they were engaged in the wholesale and retail poultry and egg business. M. A. Palmer was manager of a plant operated by them at DuQuoin, Illinois. Floyd Whitacre resided at Stewardson, Illinois, and was engaged in the wholesale poultry and eggs and general merchandise business. He was, and had been for some time prior thereto, a customer of the appellant bank. Ben Brown was a poultry buyer in the employ of Whitacre. On November 29, 1933, Palmer, acting for appellee, called Whitacre on the telephone and asked him what he would give for a load of poultry. Whitacre offered 16 cents per pound for hens, which would make a carload of such poultry worth about $700. Palmer told Whitacre he could have the poultry on the following day, provided Whitacre would have his bank send to the bank at DuQuoin a guaranty of the payment of a check for the load of poultry. Palmer further testified that he told Whitacre to be sure and have his bank wire the bank at DuQuoin that such check would be paid and that he told Whitacre that there would be a carload of poultry to which Whitacre replied "all right."

After banking hours, on November 29, 1933, appellant wired the DuQuoin State Bank that they would guarantee Floyd Whitacre's check up to $700, payable to appellee. On the following day a quantity of poultry was weighed up, loaded on trucks and delivered to Ben Brown, acting for Whitacre, and at the same time he made, executed and delivered to Palmer a check for $1,247.21, the copy of which was attached to the complaint. The weight, the kind of poultry and the amount delivered to Brown for Whitacre were all determined after the telegram in question was communicated to appellee. The check given appellee was deposited with the DuQuoin State Bank and sent through

its regular correspondence until it reached the appellant bank. At the time it reached the appellant bank, Whitacre had absconded and had not sufficient funds in the appellant bank with which to pay the check. The check was marked by appellant "Returned Unpaid. N. S. F." and returned to the DuQuoin State Bank. Later the check was presented to the appellant bank by agents of the appellee for payment which was again refused. There was no claim that appellant received any consideration for the alleged contract of guaranty.

The court found the issues in favor of the appellee and entered judgment for the sum of $756.80 against the appellant, the amount being the $700 mentioned in the telegram, plus interest.

It is the contention of the appellant bank that it guaranteed an obligation of Floyd Whitacre, in the event he, Whitacre, did not pay the obligation, which constituted a contract of guaranty and was therefore ultra vires and void. The appellee, in answer to the position assumed by the appellant, urges that the appellant bank would not be permitted to set up its unauthorized act as a defense to a suit, brought by a party who had no actual knowledge of the scope of the powers of the appellant bank and also that the appellant was estopped because of the doctrine that one cannot profit by his own wrong and where one of two parties must suffer the one who gave the power to do the wrong must bear the burden of the consequences. In support of these principles they rely chiefly upon the case of *People's Bank v. Manufacturers Nat. Bank,* 101 U. S. 181, and *Farmers & Merchants Nat. Bank v. Illinois Nat. Bank,* 146 Ill. 136. In the former case a national bank in transferring promissory notes guaranteed the payment thereof through its duly authorized agents which was one of the powers given under the National Banking Act, reading as follows: "To exercise by its Board of Directors, or duly authorized

agents, all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt, by receiving deposits," etc. To transfer negotiable instruments by indorsement and guaranty is a common mode of transacting banking business and therefore there was nothing ultra vires of the act of the bank in that case.

The other case seems to be authority for the position taken by the appellee in this case. The facts are strikingly similar to the evidence in this case and the court held that it was not ultra vires for the defendant bank to promise to honor a draft upon which suit was subsequently instituted. However, under a long line of federal cases and in a recent Appellate Court case from the First District, a general rule seems to have been well established that a national bank has no power, under the National Banking Acts, to guarantee, merely for the accommodation of another, the performance of obligations in which it has no interest and from which it derives no benefit. *Bowen v. Needles· Nat. Bank*, 94 Fed. 925; *First Nat. Bank v. National Produce Bank*, 239 Ill. App. 376. It is also well established that the powers of a national bank organized under the laws of the United States are essentially matters for federal construction and interpretation, and that State courts must yield to the decisions of the federal courts construing the powers of such banks under the National Banking Act. In the present case the telegram sent by the appellant to the DuQuoin State Bank stated:

"We guarantee Floyd Whitacre's check up to $700.00 to Healey." We cannot see how the language of this telegram can be construed to mean other than a contract of guaranty. If the undertaking on the part of the appellant was one of guaranty, then we believe that the defense of ultra vires was properly

interposed in this case according to the overwhelming weight of authorities in both the federal and State courts. One of the cases cited with approval in *First Nat. Bank v. National Produce Bank, supra,* was the *First Nat. Bank v. American Nat. Bank,* 173 Mo. 153, which in part recites as follows:

"This law has undergone thorough and exhaustive adjudication in the courts of the United States, and, briefly stated, the rule declared is that a national bank has no power, either with or without a sufficient consideration, to agree or bind itself that a draft of A. upon B. will be paid; that such agreement is a mere guaranty and is not within the powers conferred upon such banks; and that, when sued upon such a contract, the bank can successfully interpose a defense of ultra vires," citing a number of federal decisions and quoting at length from the opinion in *Commercial Nat. Bank v. Pirie,* 82 Fed. 799. The opinion adds that "this rule of the Federal Courts has been yielded to and enforced in State Courts," citing *Thilmany v. Iowa Paper Bag Co.,* 108 Iowa 357, and *Groos v. Brewster* (Tex.), 55 S. W. 590, and concludes that the contract is void and the plaintiff is not entitled to recover.

Appellee attempts to distinguish the case of *First Nat. Bank v. National Produce Bank,* 239 Ill. App. 376, by stating that both the plaintiff and defendants in that case were national banks and the plaintiff in receiving the guaranty would know the scope of power of a national bank to enter into such a guaranty. However, it is our understanding that one dealing with a banking corporation, having limited and delegated powers, is chargeable with notice of those powers and their limitations and cannot plead ignorance of their existence. Appellee was chargeable with notice that the appellant bank was without power to make a con-

tract of guaranty. *Knass v. Madison & Kedzie State Bank*, 354 Ill. 554.

It is our judgment that the testimony in this case does not support a cause of action on the part of the appellee. Their claim was based upon a contract of guaranty on the part of the appellant which was outside the charter powers of the bank and the defense of ultra vires was a complete defense to appellee's claim. The judgment of the trial court must be reversed.

*Reversed.*